208    147
215   ¹432

## THE GRACE & HYDE COMPANY

### *v.*

## WILLIAM PROBST.

*Opinion filed February 17, 1904.*

1. MASTER AND SERVANT—*general servant loaned for particular service may be the special servant of the borrower.* A general servant may be loaned by his master to a third party for some special service, and as to that service he will become the servant of such third party if he is subject to the direction and control of the latter.

2. SAME—*when court cannot say, as a matter of law, that servant was loaned.* Whether the plaintiff, at the time of his injury, was loaned by defendant to a third party for a particular service is a question of fact for the jury, where the evidence is conflicting.

3. SAME—*master is liable for his own negligence.* While the master is not liable for an injury by one servant to another where the two are fellow-servants, yet he is responsible for his own negligence, which may consist in subjecting the servant to risks not within his regular employment, the existence of which he has no reason to suspect.

4. SAME—*servant does not assume unexpected risks outside of his regular employment.* A servant is held to a knowledge of the ordinary hazards of his employment, but he does not contract to assume a risk outside of his regular employment which he neither knows of nor has any reason to expect.

5. SAME—*when party is an independent contractor.* One who agrees to construct a building, buy the material, employ the men and do the work and render statements of the expense to the owner, who is to pay the same and ten per cent in addition as compensation to the former, is an independent contractor.

6. SAME—*what questions are settled by judgment of the Appellate Court.* Whether plaintiff knowingly proceeded to work temporarily for a third party without objection or inquiry, whether the danger was so apparent to his observation that he assumed the risk, and whether the negligence charged was the proximate cause of the injury, are questions of fact settled by the judgment of the Appellate Court.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

F. J. CANTY, and J. C. M. CLOW, for appellant.

JOHN F. WATERS, and DOUTHART & BRENDECKE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit in the superior court of Cook county against appellant, a corporation engaged in the contracting business, to recover damages for a personal injury suffered in its employ. The declaration consisted of a single count, which alleged that on January 8, 1900, plaintiff was in defendant's employ as a carpenter's helper; that outside of the building where plaintiff was working, a gang of men were cutting and breaking beams of iron and steel by cutting by hand and then raising the beams several feet and suddenly dropping them on a block; that said work was extremely dangerous and was known by defendant to be so, but plaintiff was inexperienced in such work and ignorant of the methods used; that defendant failed to instruct him as to the manner of performing the work or to warn him of the attendant dangers, and ordered him to go out and assist said gang of men, and that plaintiff, while, in the exercise of ordinary care, assisting to lift one of the beams, and without any knowledge that it would be suddenly dropped, was injured by the men dropping the beam, in consequence of defendant's failure to so instruct and warn him. The plea was the general issue. Upon a trial there was a verdict for plaintiff for $5000. Upon a motion for a new trial the court required a *remittitur* of $1250, and upon said sum being remitted, overruled the

motion and entered judgment for $3750. The Appellate Court for the First District affirmed the judgment.

At the conclusion of the evidence defendant moved the court to direct a verdict in its favor. The motion was denied, and it is contended that the court erred in such denial. Upon that proposition counsel insist that the evidence showed, beyond all controversy, that while plaintiff was a general servant of the defendant, he was loaned, for the time being, to the Brown-Ketcham Iron Works to assist in breaking the beam; that he thereby became the servant of the Brown-Ketcham Company for that particular work, and that whatever liability might exist on account of his injury is against the Brown-Ketcham Company, and not the defendant.

The evidence was, in substance, as follows: Defendant was a building contractor, and agreed with the Union Stock Yards Company of Chicago to re-build a very large building, known as the "horse pavilion," at the stock yards, which had been destroyed by fire. The contract was verbal and was made during the fire. Defendant was to buy and pay for the material and labor and furnish monthly statements to the stock yards company, which was to pay the defendant all moneys paid out in constructing the building and ten per cent thereon for defendant's profit. The structural iron work of the building was let to the Brown-Ketcham Iron Works of Indianapolis, but it does not appear from the evidence just what said contract was or who let it. As the work of construction progressed, iron beams were to be placed over the driveway entering the building. Two beams furnished for that purpose were too long, and it was in cutting and breaking one of them that plaintiff was injured. It does not clearly appear from the evidence whether the cutting and setting of these beams were in the Brown-Ketcham contract or not, but it does appear that defendant was proposing to do the work and was prevented from cutting the beams by the steward of the

labor union, and that a bill for the cutting and hoisting was rendered by the Brown-Ketcham Company to the defendant. The arrangement for cutting the beam was made between James R. Howie, a time-keeper of defendant, and John P. Hart, the foreman of the Brown-Ketcham Company. Hart testified that Howie came to him and told him that he had a couple of I-beams that he wanted cut, and Hart said: "I will give you a couple of men, provided the steward will allow me to, and they can go out and cut it and then you can break it; take some of the laborers, or some of your own men, if he will let you." Howie's testimony was, that he asked Hart if he had any objections to having defendant's men cut and set the beams, and he told him he would have to go and see the steward, Quinn. The men belonged to a union, and under its rules none but iron workers could do iron work. Quinn was appointed steward of the building and was to see that the rules of the union were enforced. Howie thereupon went up into the building about ninety feet, where Quinn was, and asked him if he had any objections to defendant's men cutting and setting the iron beams. Quinn said he would not allow it under any circumstances; that all iron work on the building must be done by iron men. Howie went down and told Hart that Quinn would not allow any iron to be cut by any other than iron men, and Hart then sent two of the iron men under his charge, out to cut the beams, which were lying outside the building. The method was to cut around the beam with a hand cutter and then lift the beam and drop it across a steel rail or block to break it. Hart went out and measured the beam and saw the men started to cut it at the proper place and then went into the building. After the two iron men had cut around the beam, one of them went into the building to get men to help break it, and Hart said he would get him some men. Hart then went to Gleichart, defendant's carpenter foreman, and told him he wanted a few more men, and asked

if he would let him have them. Gleichart told the men
to go with Hart and do what he wanted. There were
about four hundred working on the building and proba-
bly about one hundred and fifty hammering at the same
time. There was a great noise, and Gleichart testified
that he did not know what Hart wanted the men for,
while Hart testified that he told Gleichart they were
ready to break the beam. Plaintiff had been in the em-
ploy of defendant three days as a carpenter's helper,
and was carrying lumber and doing other work with the
men who were sent out. In compliance with the order
of Gleichart several of defendant's men went out to the
beam. One of the iron men told them that they were
going to break the beam; that they would pick it up and
drop it and break it. The men picked it up and dropped
it, but it did not break. Then more men were called for,
and they came, plaintiff being among them. He was the
last one who reached the beam. It was partially raised
and no one told him what they were going to do with it.
He supposed, from appearances, that they were picking
it up to carry it. He took hold of the beam to help lift,
and just then the other men dropped it. He held on, and
it dropped on his leg and broke it.

One who is the general agent of another may be loaned
or hired by his master to a third party for some special
service, and as to that particular service he will become
the servant of the third party. The master is the one
who has the direction and control of the servant, and
the test is, whether, in the particular service, the servant
continues liable to the direction and control of his mas-
ter or becomes subject to the party to whom he is loaned
or hired. (*Consolidated Fireworks Co.* v. *Koehl*, 190 Ill. 145.)
Plaintiff was in the employ of defendant, and so remained
unless he was loaned to the Brown-Ketcham Company
for the particular service of breaking the beam and be-
came subject to the direction and control of the latter
company in doing that work. The evidence was of such

a nature that the court could not say, as a matter of law, that plaintiff was so loaned to the Brown-Ketcham Company. The testimony of defendant's time-keeper and of the foreman for the Brown-Ketcham Company tended to prove that the iron men were furnished to the defendant to cut the beam because Quinn, the steward of the labor union, would not allow defendant's men to do that work, and the Brown-Ketcham Company rendered a bill to defendant for cutting and hoisting the beams. In view of this evidence it cannot be said that it was proved, without dispute or controversy, that the plaintiff was loaned to the Brown-Ketcham Company.

The next proposition is, that plaintiff was a fellow-servant of the two iron men, and that the negligence in failing to advise plaintiff that the beam was about to be dropped was chargeable to the iron men, if anybody. The court could not direct a verdict on that ground without first finding, as a matter of law, that plaintiff had become the servant of the Brown-Ketcham Company by a loaning to them, and we have expressed our opinion on that subject. Furthermore, the negligence charged was negligence of the master, and not that of a fellow-servant. While a master is not liable for a negligent injury by one fellow-servant to another, he is responsible for his own negligence, which may consist in subjecting the servant to risks not within the employment and which he has no reason to expect. The servant is held to a knowledge of the ordinary hazards of his employment, but he does not contract to take upon himself a risk outside of his regular employment, which he neither knows of nor has any reason to look for. In this case plaintiff was taken from his employment and sent to this work by order of defendant's foreman under whom he worked. There can be no question but that his injury was due to the negligence of some one in failing to inform him how the work was to be done. The failure to notify him that the heavy twelve-inch iron beam was going to be dropped

was to expose him to an unknown danger not within his regular work. The court could neither say, as a matter of law, that plaintiff was a fellow-servant of the two iron men, nor that there was no negligence on the part of the defendant.

It is next claimed that the defendant was only the servant of the stock yards company, managing its business, and was not liable on that ground. The evidence does not justify the claim, but tends to show that the defendant was an independent contractor, buying the material, employing the men and doing the work for ten per cent of the cost of the building.

The other points are, that the plaintiff was advised that he was going into the employ of the Brown-Ketcham Company temporarily; that he proceeded to do the work without any objection or inquiry what he was to do, and therefore assumed the risk because the danger was apparent to his observation; that if he did not know what the men were going to do with the beam it was his duty to inquire, and that the negligence charged was not the proximate cause of the injury. These were all controverted questions of fact, which have been finally settled by the judgment of the Appellate Court.

The evidence was not such as to justify the court in directing a verdict, and it was not error to overrule the motion.

It is also argued that the judgment should be reversed because of the refusal of the court to give instructions numbered 1, 2, 3, 4, 5, 6 and 26, as requested by the defendant. They were all of the same nature, and stated that if the jury believed, from the evidence, that certain facts existed, then, in law, the plaintiff was loaned to the Brown-Ketcham Company for the purpose of breaking the beam and became the servant of that company, and defendant would not be liable for his injury. The state of facts recited in each instruction was, in substance, that the Brown-Ketcham Company undertook to

cut the beam, and was engaged in cutting it by its men, and requested the defendant to assist in breaking it, and that defendant's men, including the plaintiff, were sent to render such assistance. In view of the evidence we do not regard the hypothesis of fact as sufficient to establish, in law, a loaning of the plaintiff to the Brown-Ketcham Company. Some of the instructions would be as applicable to the loaning of the iron men to the defendant as the loaning of the plaintiff to the Brown-Ketcham Company. It was not disputed that the two iron men were cutting the iron beam and called for more men to assist in breaking it, and that defendant's men, including the plaintiff, were sent to their assistance, but there was also evidence fairly tending to prove that defendant proposed to do the work itself, and that the iron men were furnished to the defendant to cut the beam preparatory to breaking it on account of the rules of the labor union. This evidence could not be ignored in determining whether the Brown-Ketcham Company or defendant was plaintiff's master in doing the work, or in giving an instruction as to whether, in law, plaintiff was to be regarded as loaned to the Brown-Ketcham Company. Plaintiff did not know what he was sent to do or that he was sent to work for Brown-Ketcham or came under the control of a new master. The instructions were at least misleading. Some of the instructions stated the correct principle, that where a servant is loaned to another for particular service he becomes, in the particular employment, the servant of the person to whom he is loaned although he is the general servant of his employer; but as applied to the case each instruction omitted important qualifications, and they were all properly refused.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*