## Henry G. Smith, Appellee, v. Urias Eichelberger, Appellant.

### Gen. No. 5,631.

1. NEGLIGENCE—*when proof of relation of master and servant unnecessary.* Proof of the relation of master and servant is unnecessary, where it appears that plaintiff was employed about a corn shredder, under the direction of defendant, and when he was in a dangerous position defendant, with knowledge, negligently started part of the machinery.

2. MASTER AND SERVANT—*when person becomes servant.* Where a servant obeys a direction, by the person who hired him, to work for such person's father he becomes the servant of the father.

3. MASTER AND SERVANT—*assumed risk.* One injured by the starting of a corn shredder, while removing with his hands material which clogged it, did not assume the risk, though there was a stick provided for the purpose; where the master ordered him to remove the obstructions and saw him do so without a stick; he had done so several times before; had never seen a stick used; was not familiar with a shredder and had so informed the master.

4. EVIDENCE—*when submission of photographs not error.* Where action is brought for injuries received while cleaning out a corn shredder, it is not error to submit to the jury photographs of another shredder of the same make, where defendant's proof shows that they fairly represent the machine on which the accident occurred.

5. MASTER AND SERVANT—*instructions.* An instruction which states that the relation of master and servant existed between plaintiff and defendant, if defendant's son loaned plaintiff, with his consent, to defendant for some service and that while so working under defendant's control plaintiff was injured, is not erroneous where from the evidence, if plaintiff was the servant of the son, it is obvious that defendant acquiesced in the loaning of plaintiff to him.

6. INSTRUCTIONS—*repetition.* Refusal of an instruction, the principle of which is already given, is not error.

7. INSTRUCTIONS—*construed.* An instruction is correctly refused which provides that plaintiff cannot recover unless he was in the employ and under the control of defendant, where recovery might be had if plaintiff was either in the employ or under the control of defendant, and where the relation of master and servant alleged in the complaint is ignored.

8. APPEALS AND ERRORS—*when refusal of correct instruction will not reverse.* Though an instruction to the effect that the preponderance of evidence is not alone determined by the greater number of witnesses, but the number of credible witnesses is a proper element to consider might properly have been given refusal thereof will not reverse, where it was partly covered by those given, it is clear that plaintiff has a cause of action to which there is no defense, and the damages are not excessive.

9. COSTS—*additional abstract.* Where a judgment is affirmed on appeal, the cost of an additional abstract filed by the appellee may be taxed to the appellant where it supplies omissions and corrects the original.

Action in case for personal injuries. Appeal from the Circuit Court of Du Page county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

S. N. HOOVER, J. BRUCE AMELL and HARVEY GUNSUL, for appellant.

ALSCHULER, PUTMAN & JAMES and CHARLES W. HADLEY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On November 17, 1910, plaintiff, Henry G. Smith, lost his right arm in a corn shredder owned and operated by defendant, Urias Eichelberger, and sued him for damages in the Circuit Court of DuPage county. The original declaration contained two counts. Afterwards ten more were added, seven of which were later amended. As abstracted, the first original count charged that plaintiff was ordered to clean out the shredder and while he had his arm in the machine, defendant negligently replaced the belt, and the machine started. The second original count charged that while he was removing obstructions from the shredder with his arm in the machine, defendant, knowing his position, negligently started the machine. The first additional count charged that plaintiff was ordered into the dangerous position and then, with knowledge of his danger, defendant negligently caused part of the machinery to start. The second additional count charged the defendant with the duty to use reasonable care in operating the shredder and not to expose plaintiff to unnecessary danger; and that the defendant negligently controlled and operated the machine. The third additional count charged that defendant negligently ordered plaintiff to clean out the corn shredder, which was dangerous work, as known to defendant and unknown to plaintiff. The fourth additional count was substantially like the first additional count. The fifth additional count charged that defendant knew or should have known the danger, unknown to plaintiff, and not so apparent that a man of ordinary prudence would not expose himself to them. The sixth additional count was substantially like the fifth. The seventh additional count charged that the employment was dangerous; that plaintiff was inexperienced and ignorant of the dangers; that defendant knew or should have known the danger; that it was defend-

ant's duty to warn and instruct plaintiff, and that defendant negligently failed to do so. The ninth additional count charged that defendant negligently failed to furnish plaintiff with a safe place to work. All the counts except the eight additional proceeded on the theory that the relation of master and servant existed between the parties. This count alleged that plaintiff was employed upon and about the corn shredder under the order and direction of defendant and when he was in a dangerous position, defendant, knowing the dangerous position, negligently started part of the machinery. The tenth additional count was a summary of all the additional counts except the eighth. All the counts alleged that plaintiff's arm was torn off by reason of the negligence of the defendant. There was a plea of not guilty. A trial resulted in a verdict of $2,000 for plaintiff. Motions for a new trial and in arrest of judgment were overruled, judgment was entered on the verdict, and defendant prosecutes this appeal.

The shredder was about 18 or 20 feet in length, about 7 feet high, and a little over 40 inches wide. It was driven by steam and had a feeding apron at the front, the upper part of which moved toward the machine like a belt, carrying stalks toward the machine. At the end of this apron were two feeding rollers placed one above the other. The feeding rollers and the feeding apron were driven by power communicated by a small belt at the side of the shredder. Behind these two rollers was a space of about 22 or 23 inches, bounded on the sides by the side of the machine, and on the front by the feeding rollers. The snapping rollers were about 22 or 23 inches back of the feeding rollers and extended across the width of the shredder. The sides and the top of the machine were boarded up and while there were some pulleys and cog-wheels on the outside of the body of the shredder, the only rollers which were in sight were the feeding rollers. About

two-thirds of the shredder, from the rear forward, had a wooden covering and the rest of the top was a tin hood which was so hinged as to form a trap door in the roof of the shredder. It was curved down a few inches at the front end. There was a board, held in place by two lugs, which partly covered the open space between the tin hood and the feeding rollers, the tin hood coming down over the top and forward side of the snapping rollers, being about ten or twelve inches above them. Corn and corn stalks would, at times, clog in this open space between the feeding rollers and the snapping rollers. Appellee had been in the service of appellant, or his son George, for less than three days. On the first two days and until about 10 o'clock of the third day he was employed in hauling the corn from the machine to the crib, after which he was set to work at tending the machine. He came from a state where little corn was raised and had never seen a corn shredder before this time, and so informed appellant. The machine became clogged. He was directed to remove the obstruction. He proceeded to do so in the presence of appellant in the way he had cleaned it out three times before, once with the assistance of appellant's son Abe. He got upon the machine, knelt down on the tin hood and removed the corn with both hands, then placed his left hand upon the feeding roller and with his right hand threw out the corn and stalks. While in that position, the feeding roller suddenly started, throwing him down onto the roller and his right hand was drawn into the snapping rollers, and in his efforts to get out his right arm was torn off, necessitating amputation within six inches of the shoulder.

Appellant contends that the declaration avers the relation of master and servant, and that the proof shows that appellee was not his servant and that therefore the judgment must be reversed. If the proof sustained the averment of the 8th additional count, the

proof of the relation of master and servant was not necessary. The evidence shows that appellee and a companion came to Naperville from an employment agency in Chicago with letters addressed to George Eichelberger, a son of appellant; that appellant met them and took them to his home, and that on the following morning George said that he did not want two men and took the companion to his home, and appellee remained with appellant and worked on the shredder under his orders. Even if the proof did show that appellee was originally hired by George, yet it is not denied that George directed him to work for appellant and that he obeyed that direction. This made him the servant of appellant. Consolidated Fireworks Co. v. Koehl, 190 Ill. 145. The rule above mentioned was approved and followed in Grace & Hyde Co. v. Probst, 208 Ill. 147.

There was proof that there was a stick sometimes used to remove the material that clogged the shredder. It is claimed that appellee assumed the risk because he did not use the stick. There was proof that on the day of the accident he and appellant's son, Abe, removed obstructions without using a stick, and appellee testified that he had seen Abe do so several times before, and that he never saw a stick used in removing the obstructions. Appellant ordered appellee to remove the obstructions, stood by and saw him do it, and did not interrupt his doing it without a stick nor direct him to use one. Appellee, not being familiar with a shredder, of which fact he informed appellant, it seems clear to us that he did not assume the risk.

There was proof for appellee that the board over the opening between the feeding rollers and the tin hood was not in place at the time of the accident, and there was proof for appellant that it was in place. The distance through which the obstructions would have to be removed if the board were in place was but four or five inches, while if not in place, the distance

would be from twelve to eighteen inches. If the board had been in place it would have been practically impossible for appellee's hand to have been caught in the snapping rollers.

Appellee was not warned by appellant of the danger of putting his hand into the place where he was removing the obstructions. He testified that he did not know it was dangerous. The feeding device was not in motion when he put his hand into the machine, and there is proof that appellant started the machinery while appellee was in this position. From a careful consideration of all the evidence, we think the jury were warranted in finding that it was negligent for appellant to order appellee to perform this dangerous work without explaining to him the danger; that it was negligent for appellant to start the machinery while appellee was removing the obstructions; and also that appellant negligently failed to provide appellee with a reasonably safe place in which to work.

Appellee offered in evidence several photographs of another corn shredder of the same make to illustrate the appearance of the machine in question. They were objected to as not being properly identified as true representations of the machine in this case. Defendant's own proof shows that they were fair representations of the machine on which the accident occurred. There was no error in submitting them to the jury to be considered in connection with other evidence in the case. Kankakee & S. R. Co. v. Horan, 131 Ill. 303; Illinois S. R. Co. v. Hayer, 128 Ill. App. 315.

It is argued that it was error to give appellee's 7th instruction, which told the jury that if they believed from the preponderance of the evidence that George Eichelberger loaned appellee to appellant, with appellee's consent, for some particular service to be rendered under the direction and control of appellant, and that while so loaned and while working under the control of appellant, appellee was injured, then, as a mat-

ter of law, the relation of master and servant existed between them at the time of such injury. It is argued that this instruction ignores the necessary element of assent on the part of appellant, and that there was no evidence tending to show that appellant ever assented to such loaning. In Ramsey's Estate v. Whitbeck, 81 Ill. App. 217, the court says: "To loan, according to Webster is 'to deliver to another for temporary use, on condition that the thing be returned, or to deliver for temporary use on condition that an equivalent in kind shall be returned with a compensation for its use.'" 5 Cyc. 166. A loan is a bailment, and one essential of a bailment is an acceptance of the subject-matter. Taking property into possession or control is a sufficient acceptance. 5 Cyc., *supra.* The evidence is undisputed that George said to appellee, "You stay here and help father." He did stay there, and worked under the direction of appellant at and prior to the time of the injury. If, in fact, appellee was the servant of George, it is obvious from the evidence that appellant acquiesced in the loaning of appellee to him, and there was no error in giving the instruction.

The trial court refused four instructions requested by appellant. The first was that the burden of proof was on appellee to prove his case by a preponderance of the evidence. The same statement was contained in appellant's 14th, 15th, and 16th given instructions, and it was not error for the court to refuse an instruction containing a principle already given to the jury. The court is not required to give the jury more than one instruction upon a particular subject. National Enameling & Stamping Co. v. McCorkle, 219 Ill. 557.

The second refused instruction told the jury that unless they believed from the evidence that appellee was in the employ of appellant and under his control and direction, he could not recover. This instruction was bad for three reasons: first, if appellee was either in the employ of appellant or under his control or

direction, he might recover (Grace & Hyde Co. v. Probst, *supra*); second, this instruction combined two elements, employment and control, and told the jury that unless they believed that both elements were established, appellee could not recover, while under the evidence and other instructions the jury were authorized to find for appellee if they believed either that there was an employment or control, as explained in the other instructions; third, it ignored the relation of master and servant, and directed a verdict against appellee, regardless of the averments of the 8th additional count.

The third refused instruction was bad for like reasons.

The fourth refused instruction was as follows:

"The court instructs the jury that while the preponderance of the evidence is not alone determined by the greater number of witnesses testifying the one way or the other, yet the number of credible and disinterested witnesses, testifying on the one side or the other, is a proper element for the jury to consider in determining where lies the preponderance of the evidence."

We think this instruction should have been given. It is, however, covered in part by appellant's 17th given instruction. This fourth refused instruction has been disapproved sometimes by the Supreme Court, but no case has been reversed on account thereof. In Elgin, J. & E. R. Co. v. Lawlor, 132 Ill. App. 280, we took the ground that where the instruction said, as here, that the preponderance of the evidence is not alone determined by the number of witnesses, it sufficiently advised the jury that the number of witnesses is one of the elements to be taken into consideration, notwithstanding that element is not restated in a second part of the instruction. On appeal, the Supreme Court did not take exactly that view, but did not reverse the judgment. Elgin J. & E. R. Co. v. Lawlor, 229 Ill. 621. While we would be better satisfied if this instruction had been given, yet it is clear to us that

appellee has a cause of action to which there is no defense, and the damages are not excessive. We therefore conclude that we ought not to reverse the judgment because of the refusal of the fourth instruction.

The original abstract did not contain a marginal paging and reference to the record, required by Rule 16 of this court. 137 Ill. App. 625. It was otherwise defective in many particulars. A motion was made to strike it from the files. We permitted it to be amended in ink by placing the page of the record upon the marginal pages of the abstract, and denied the motion. We did not then examine the abstract carefully enough to realize its many defects. If we had we should have stricken it from the files. Appellee filed an additional abstract, supplying omissions and correcting the original in many particulars, and its cost is ordered taxed to appellant.

Finding no reversible error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*