## LIABILITY OF MASTER FOR NEGLIGENCE OF SERVANT WHILE LOANED TO ANOTHER.

### Superior Court of Cincinnati.

IRENE DEPPEN v. THE E. A. CONKLING BOX COMPANY.

#### Decided, January 3, 1916.

*Negligence—Driver and Team Sent to Deliver Christmas Packages— Under Direction of a Santa Claus Committee—Tail-Gate of Wagon Falls and Injures a Passer-by.*

The general servant of one master becomes the special servant of another to such extent as to relieve the former from liability for the servant's negligence when the servant is placed under control of the special master and is engaged in carrying out the latter's orders when the negligence occurs, and, in such case,. the fact that the wages of the negligent servant were being paid by the general employer is immaterial.

*O'Connell & O'Connell,* for plaintiff.
*Littleford, James, Ballard & Frost,* contra.

PUGH, J.

On December 22d, 1913, the plaintiff, Irene Deppen, while passing from the sidewalk, at the southwest corner of Fourth and Vine streets in this city, in an attempt to board a street car which stopped at that place, was injured by the fall of the tail-gate of a wagon which was standing in the street alongside the curb and behind which she was compelled to go in order to reach the car.

The wagon belonged to the defendant, the E. A. Conkling Box Company, and was in charge of one of its drivers, one William Lucas.

This is an action by the plaintiff against the box company to recover damages for the alleged negligence of its driver, Lucas, in permitting the fall of the said tail-gate.

At the close of the plaintiff's case at trial the following state of affairs appeared:

The Chamber of Commerce had appointed a committee to collect and distribute Christmas baskets among the poor of this city, and various business concerns, among them the defendant in this case, had agreed to lend the committee their wagons and drivers for the purpose of delivering their baskets. The committee was popularly called the "Santa Claus Committee."

On the morning of the day of the accident, the driver, Lucas, with his wagon had been sent by his employer to the headquarters of the Santa Claus Committee with instructions to report to such committee and do whatever it ordered him. Lucas drove to the Union Central Building, where the headquarters was located, drew his wagon up alongside the curb, and reported to some unidentified member of the committee, under whose directions the wagon was loaded with Christmas baskets. When the load was complete, Lucas pulled up the tail-gate of the wagon with the intention of fastening it in the usual way, when he was ordered by the committeeman in question to let it down to facilitate quick delivery by the volunteer workers who had loaded the wagon and were to accompany Lucas and make the house-to-house deliveries. The volunteer workers in this case were two boys from the House of Refuge.

Lucas' account of the accident is the only one we have. None of the other witnesses was able to explain why the tail-gate fell, and no member of the Santa Claus Committee was called as a witness, nor did either of the House of Refuge boys appear at trial. The driver's story is that, while lowering the tail-gate, under directions of the Santa Claus Committeeman, the two boys voluntarily lent a hand with such unexpected vigor as to push the gate out of the driver's hands and cause it to fall on the head of the plaintiff who, as stated, was passing behind the wagon at the time.

Whether or not there was any negligence on the part of the driver was never determined, as the court directed a verdict for the defendant on the ground that, when the accident happened, Lucas was acting as the servant of the Santa Claus Committee, as his special master, and not as the servant of his general employer, the E. A. Conkling Box Company.

The case now comes up on motion for a new trial and the only question presented is whether the court erred in its peremptory instruction to the jury.

There was no dispute of fact involved so far as this question was concerned. Indeed, in their opening statements to the jury and all through the trial and the argument for a new trial, counsel agreed that there was nothing before the court except the question of law, viz., whose servant was Lucas at the time of the accident, in view of the testimony given by him at trial?

It is well established law that the general servant of one master may become the servant of another to such an extent as to relieve the former from liability to third persons for the negligence of such servant. But before this can occur, it must appear that, at the time of the alleged negligence, the servant had been placed by his general employer under the control of the special master, and that he was engaged in carrying out the orders of the special master when he was guilty of the negligence which caused the injury.

8 Thompson on Negligence, Section 3725:

"A servant loaned to another with the consent of the servant is the servant of the person for whom the service is performed where he is under the control of such person in performing the service."

*Rourke* v. *White Moss Colliery Co.*, L. R. 2 C. P. (C. A.), 205, 209:

"But when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

*Wolfe* v. *Mosler Safe Co.*, 124 N. Y. S., 541 (syl.):

"Where a master loans his servants with their consent to a third person to perform certain work, the third person for the time being is the master, he having for the time being the control of the servants."

And see, *Wust* v. *C. C. R. Co.*, 142 Wash., 176, 181, 182; *G. & H. Co.* v. *Probst*, 208 Ill., 147; 1 *LaBatt's Master and Servant*, Section 57 (2d Ed.); *Mfg. Co.* v. *Towns*, 148 Ala., 146, 152; *Wyman* v. *Berry*, 106 Me., 42, 47; *Salvo* v. *V. M. Larkin & Son*, 144 N. Y. S., 776.

The fact, if such it be, that the wages of the negligent servant were paid by the general employer and not by the special master is immaterial.

The court was and still is of opinion that this case comes within the rule thus stated, and the motion for a new trial will, therefore, be overruled.