(No. 18667.—

THE ALLEN-GARCIA COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDWARD DARTT, Defendant in Error.)

*Opinion filed April 20, 1929.*

WILLIAM P. BOYNTON, for plaintiff in error.

A. B. GARRETT, and THOMAS L. FEKETE, JR., for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Edward Dartt, defendant in error, was accidentally injured while at work as operator of a steam crane used in and about the erection of a tipple at the coal mine of Donk Bros. Coal and Coke Company near Edwardsville, Illinois. He filed his claim for compensation for that injury with the Industrial Commission against plaintiff in error, the Allen-Garcia Company, and Donk Bros. Coal and Coke Company. A hearing was had before an arbitrator, and Swift & Co. also appeared and took part in that hearing. At the close of the evidence for defendant in error, with his consent, his claim was dismissed as to Donk Bros. Coal and Coke Company. The arbitrator entered an award against plaintiff in error, finding that the earnings of Dartt for the year prior to his injury were $1872 and his average weekly wage $36; that at the time of his injury Dartt had three children under sixteen years of age; that necessary first aid, medical, surgical and hospital services had been provided for him by plaintiff in error, and that he was entitled to receive from plaintiff in error $17 a week for 27-3/7 weeks for temporary total incapacity, then payable and amounting to $466.30, and to an additional sum of $405.26 for first aid, medical, surgical and hospital services. The award was reviewed and confirmed by the Industrial Commission and by the circuit court of St. Clair county on *certiorari* proceedings. This court allowed a writ of error.

The only contention made in this court by plaintiff in error is, that the record does not establish the existence of the relationship of employer and employee between plaintiff in error and defendant in error at the time of the latter's accidental injury.

There is practically no conflict in the evidence. Donk Bros. Coal and Coke Company contracted with plaintiff in error to furnish engineering services in connection with the construction of "top works, shacks, and mechanical in-

stallation at the bottom of No. 4 mine at Edwardsville, Illinois." Under the contract all material was to be furnished by the coal company, and plaintiff in error, among other things, was to assist in the purchase of material, inspect all material and workmanship, supervise the work in the field, and do such part of the fieldwork with its own force as appeared to the best interest of the owner, the coal company, and certify its pay-roll to the coal company, to be paid by it direct. The coal company agreed to pay "all pay-rolls, bills for material, labor, traveling and other expenses" of plaintiff in error, and in addition thereto five per cent of the actual cost of the work for its services. The construction work was being done by plaintiff in error for the coal company, and it informed the coal company that the work would be expedited if a steam crane were furnished to handle the steel to be used in the construction. The coal company applied to Swift & Co., the owner of the steam crane that was later used in the construction work, to furnish the crane and an engineer to operate it, and a contract was entered into between them. The terms for the rental of the crane do not appear in the record, but the coal company was to pay Swift & Co. some amount a day for the use of the crane, based on the number of hours it was in service, and the amount of Dartt's wages, Dartt at the time of that contract being in the employ of Swift & Co. for the operation of the crane in its business. About June 1, 1923, Dartt was ordered by the master mechanic of Swift & Co. to take the crane to No. 4 mine of the coal company and work with the crane there. The master mechanic told Dartt that he would be paid by Swift & Co. for his work at the mine at the same rate that it had been paying him while in its employ, and that he would be furnished with a helper—a fireman. Dartt reported to No. 4 mine with the crane and asked for the boss. Wayne O. Axtell, superintendent for plaintiff in error, told Dartt in a general way what he was to do with the crane and to

take orders from one Heller, who was Axtell's assistant.
Dartt lived in East St. Louis, and it was agreed between
him and Axtell that he should be allowed to go home every
evening and return in the morning during the time he
should work at the mine and that his transportation ex-
pense would be re-paid to him. It was further agreed be-
tween Dartt and Axtell that Dartt should take the first trol-
ley car from East St. Louis to Edwardsville in the morn-
ing and arrive at the mine about 7:45 o'clock, and that he
should then work up to 3:15 o'clock in the afternoon, the
general quitting time, and thereafter grease the machine,
fill the boiler with water, etc. The other men started to
work at 7:00 o'clock in the morning, and Dartt was to work
after the general quitting time in the afternoon long enough
to make up the time he was late in starting to work in the
morning. Dartt did no work other than with the crane.
With the crane he moved steel used in the construction
work. Heller, who acted as fireman on the crane, told
Dartt what pieces of steel to handle and what to do with
them. Dartt reported to Swift & Co. the hours of his
work and was paid by that company. He did not appear
on the pay-roll of plaintiff in error, but Axtell kept a rec-
ord of his time and also kept a record of the amount of
money due him for his expense in going back and forth
from his home to work. The latter amount was paid to
Dartt by the coal company on certificate of Axtell. Ax-
tell testified that, so far as he knew, the rental cost of the
crane and the wages of Dartt were not considered a part
of the cost of the work on which plaintiff in error was
paid a percentage for its services under its contract with
the coal company. About June 10, Dartt, on orders from
Swift & Co., returned with the crane to that company, but
soon went back with the crane to mine No. 4 and worked
there until the accidental injury, on July 7. On the morn-
ing of that day Dartt came to the job, as usual, a short
time after the other men had begun work. Heller was

operating the crane, and while Dartt was on or about the crane, getting ready to operate it, Heller attempted to lift too heavy a load, the crane tipped over, and Dartt was injured. After Dartt was injured Swift & Co. would not furnish another engineer for the crane and plaintiff in error employed an engineer from Alton. He was hired by Axtell and was on plaintiff in error's pay-roll.

In section 4 of the Workmen's Compensation act the word "employer" is defined to include every person, firm, public or private corporation, "who has any person in service or under any contract for hire, express or implied, oral or written, and who is engaged in any of the enterprises or businesses enumerated in section 3 of the act," etc.; and in section 5 the term "employee" is defined to mean "every person in the service of another under any contract of hire, express or implied, oral or written, including aliens and minors, who are legally permitted to work under the laws of the State," etc. These definitions should be construed broadly. (*Field & Co.* v. *Industrial Com.* 285 Ill. 333.) At common law an employee in the general employment of one person may, with his consent, be lent to another for the performance of special work and become the employee of the person to whom he is lent while performing such special service. (*Grace & Hyde Co.* v. *Probst,* 208 Ill. 147; *Densby* v. *Bartlett,* 318 id. 616.) This same principle of law applies to cases arising under the Workmen's Compensation act. (*Scribner's case,* 231 Mass. 132, 120 N. E. 350; *Cayll* v. *Industrial Com.* 172 Wis. 554, 179 N. W. 771.) The test whether or not the workman, in the performance of the special work for which he is lent, becomes the employee of the person to whom he is lent, is whether or not he becomes for the time being wholly subject to the control and direction of the person to whom he is lent for the special service being performed and freed during such time from the direction of his master. *Consolidated Fireworks Co.* v. *Koehl,*

190 Ill. 145; *Grace & Hyde Co.* v. *Probst, supra; Densby* v. *Bartlett, supra.*

Plaintiff in error does not dispute any of the above propositions, and says that their application to the facts in this record clearly shows that Dartt was the employee of Donk Bros. Coal and Coke Company and not of plaintiff in error. The question as to Dartt's employer at the time of the injury is one of fact. (*Consolidated Fireworks Co.* v. *Koehl, supra; Emack's case,* 232 Mass. 596, 123 N. E. 86.) In the case last cited, which arose under the Workmen's Compensation act, Emack was employed by the Aberthaw Construction Company as the engineer in charge of a locomotive crane. The crane, with Emack to operate it, was loaned to the Holbrook, Cabot & Rollins Corporation, a sub-contractor, and Emack was injured while operating the crane in the work of the sub-contractor. The Industrial Accident Board found that Emack was the employee of the Aberthaw Construction Company. The court in its decision said: "Where a person in the general employment of a contractor assists with a machine or other appliance belonging to the contractor in the work of an employer to whom the servant is lent, the person so lent may become, with his consent, the servant of the special employer. But in such a case it will be presumed that in the management of the machine or appliance the employee in charge remains the servant of the general employer and does not become the servant of the special employer. * * * This presumption, however, may be overcome by evidence to the contrary, and the facts may be such as to warrant the finding that the owner of the machine has so far surrendered the right of control that even in this particular the person in charge of the machine has become the servant of the special employer." The court further said: "In the case at bar there was evidence upon which the Industrial Accident Board could have found that Emack, in the

operation and management of the locomotive crane, became the employee of the Holbrook, Cabot & Rollins Corporation. The correspondence between the two corporations indicates that the crane was to be at the disposal of the Holbrook, Cabot & Rollins Corporation. There was evidence that when Emack and his fireman started the work for the Holbrook Company they were informed by the master mechanic of the Aberthaw Company 'to do absolutely as they were told by the sub-contractor,' and that they made no objection to this direction. But the Industrial Accident Board was called upon to decide a question of fact, and it might well have found that even if Emack was temporarily in the employment of the Holbrook, Cabot & Rollins Corporation, in the care and operation of the crane he remained the employee of the Aberthaw Company. It could have found that the crane was a complicated machine, requiring experience and skill in its operation; that Emack was an experienced engineer and that the control was left entirely to him, with no direction for its management given by the Holbrook Company. It does not appear that anyone employed by the sub-contractor understood how to operate the crane, and the master mechanic of the Aberthaw Company testified that 'Mr. Emack was supposed to know what the crane would lift on a certain job, and it was left to Mr. Emack to use his judgment as to how much he should lift. If Mr. Emack was told to lift a greater load than the crane would stand he would be supposed to say that the crane would not stand it;' and 'for the protection of the crane as property of the Aberthaw Company * * * it was expected to do only work which would not endanger the crane.' On this evidence the board found that Emack did not become the servant of the Holbrook, Cabot & Rollins Corporation in the care and management of the locomotive crane but in this respect remained the employee of the general employer. We can not say that this finding was wrong. The question was

one of fact, there was evidence to support the finding, and we cannot set it aside."

In *Scribner's case, supra,* an ice company let to a coal company a pair of horses, a wagon and a driver. The ice company paid the driver his wages and expected him to take care of the horses, but the driver was under the complete supervision of the coal company and took all his orders from that company. A finding of the Industrial Accident Board that the driver was the employee of the ice company was reversed by the Supreme Court of Massachusetts.

In this case Dartt at the time of the accident was employed in work being done by plaintiff in error. He did that work under orders from its superintendent and assistant superintendent. His general employer, Swift & Co., gave him no orders and exercised no control over him whatever in the performance of that work. Neither did Donk Bros. Coal and Coke Company. Arrangements for Dartt's hours of work and for his going to and returning from his home each day were made with the superintendent of plaintiff in error. The facts that Dartt's wages were re-paid to Swift & Co. by Donk Bros. Coal and Coke Company and that the latter company re-paid to Dartt his expense for car fare in going to and from work and to his home are of little, if any, weight to show that Dartt was not an employee of plaintiff in error, since, under the contract between plaintiff in error and the coal company, the latter was to pay all of the pay-rolls, labor, traveling and other expenses of plaintiff in error. But aside from the contract, the fact that plaintiff in error did not pay Dartt's wages would not determine that he was not its employee. (*Indian Hill Club* v. *Industrial Com.* 309 Ill. 271.) It is true that the arrangement under which Swift & Co. sent the crane to the mine where the accident happened was not made by plaintiff in error but by Donk Bros. Coal and Coke Company, but that company made such arrangement on the suggestion of the superintendent of plaintiff in error

that a steam crane would expedite the work, and the crane was used, under the direction of plaintiff in error, in the work which it was doing as an independent contractor.

The conclusion and determination of the Industrial Commission on a question of fact will not be disturbed unless against the manifest weight of the evidence, regardless of the conclusion this court might reach were it to hear the evidence. (*County of Cook* v. *Industrial Com.* 327 Ill. 79.) The finding that defendant in error was an employee of plaintiff in error at the time of the accidental injury is not manifestly against the weight of the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*