(No. 27253.—

FRANSEN CONSTRUCTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOAN REICHENBERG, Defendant in Error.)

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 12, 1944.*

Thomas C. Angerstein, George W. Angerstein, Wendell H. Shanner, and William Daily, for plaintiff in error.

Marshall S. Howard, for defendant in error.

Mr. Justice Fulton delivered the opinion of the court:

This cause arises upon an application for compensation filed under the provisions of the Workmen's Compensation Act by Joan Reichenberg, a minor, by Ruth Madsen, her legal guardian, for the accidental death of Frank Reichenberg, her father. A writ of error was allowed to

Fransen Construction Company, a corporation, to review the judgment of the superior court of Cook county, which confirmed the decision of the Industrial Commission awarding compensation to Joan Reichenberg.

The facts show that Stone & Webster were the general contractors in the erection of the U. S. Government's Ordnance Plant near Elwood, Illinois. Elmer Larson had a contract with Stone & Webster to furnish the gravel for this job. Larson, who did no hauling on the job himself, entered into a contract in December, 1940, with Fransen Construction Company, a corporation, the plaintiff in error herein. Under the terms of the contract plaintiff in error was to haul gravel from Larson's gravel pits to locations in the Government reservation wherever gravel was needed and for which hauling Larson agreed to pay the Fransen company seventy cents per cubic yard hauled. Although plaintiff in error maintained a general office in Chicago, a temporary field office was set up on the Government reservation.

Being in need of additional trucks to haul gravel, plaintiff in error, through Frank Goss, its president, communicated with certain other hauling contractors and procured trucks from them, whereby Fransen agreed to pay such contractors the sum of fifty cents per cubic yard for gravel hauled. Thus, for each cubic yard of gravel hauled by Fransen or the hired trucks, Fransen received seventy cents per cubic yard and paid thereout fifty cents for each cubic yard hauled by a hired truck. The difference of twenty cents per cubic yard received on the hired trucks, according to the president of plaintiff in error, represented expenses, such as supervision, and profit. Fransen used up to thirty trucks of its own and a various number of hired trucks in addition thereto.

Frank Goss, who was in charge of the Fransen Construction Company drivers, also communicated with Mr. Bowman of Local 786, Building Material and Supplies

Union, and inquired of him relative to other truckers with available trucks. Goss testified that he told Bowman he would pay fifty cents per cubic yard for all gravel hauled by hired trucks and explained the nature of the job, where the truckers were to haul from, where they were to haul to, what time they started and what time they usually quit.

Bowman called, among others, Marland Cartage Company, owned by Arthur B. Crouch of Park Ridge, Illinois. Crouch also operated the Marland Oil Company, operating five trucks in the oil business and two trucks, at the time Bowman called him, in the cartage business. He had operated as high as five trucks in his cartage business. He testified that Bowman called him and inquired as to whether Crouch could send two trucks to Wilmington since they were unable to secure help there and needed additional men; that pursuant to Bowman's request Crouch sent two trucks and two drivers to Wilmington on January 27, 1941. The two drivers were Frank Reichenberg and Elmer Ebel. Crouch further testified he was told to send the trucks and drivers to the Fransen Construction Company and to have them report at the hour of seven o'clock in the morning. To his best recollection Crouch was not told that he was to receive fifty cents per cubic yard until several days after he had sent the trucks to Wilmington. Before sending the trucks to Fransen Construction Company he told them to report at the job at seven o'clock in the morning and to find a place to park the trucks in the evening. Crouch sent no supervisor down on the job and was never on the job himself until after Frank Reichenberg was killed on February 11, 1941, at which time he visited the scene of the accident. It further appeared from Crouch's testimony that Reichenberg and Ebel were paid by him on a daily basis according to the union rate and that each driver kept a record, on cards which they procured on the reservation, of the number of cubic yards hauled by them during the day and the

amount of gas and oil used, which cards they turned in to him about twice a week. Crouch paid the social security for each of his drivers and paid them weekly. According to his testimony he gave them no directions with reference to the method of their work, nor did he tell them what days to work or what parts of the days, nor did he designate their hours of employment; he billed Fransen for the number of cubic yards hauled by the drivers at the rate of fifty cents per cubic yard; that this job was different from other jobs in that on local jobs he kept track of where his drivers were and what they were doing and that they reported directly to him when work should cease and called in for more work; that on the Elwood job he had no way of telling whether they were working or not.

Elmer Ebel testified that about January 27 or 28, 1941, Crouch, his employer, told him and Frank Reichenberg to report to the Fransen Construction Company the next morning at seven o'clock and to leave the trucks down there and to arrange for their parking over night; that Crouch only told them that they would work for the construction company hauling material, but did not tell them how many hours they were to work. The next morning Ebel and Reichenberg reported at the gravel pit where cranemen, shovelmen, truck drivers, etc., were working and were told that it was the Fransen Construction Company and their headquarters. There was a small shack at the gravel pit. Both men loaded up and were told by the men at the pit to go to a trailer along the highway. The man at the trailer, whom Ebel did not know, nor for whom or by whom he was employed, told them where to dump the loads. In other words, Ebel and Reichenberg were told by the men at the pit where to get their loads and were told by them thereafter to report to the trailer for further instructions. At the trailer they were told where to dump their loads. This general practice con-

tinued. Upon entering in the morning, the man at the trailer gave both of Crouch's drivers cards upon which was kept a record of load-ticket numbers and the amount of cubic yards hauled in each load. On the bottom of the card was printed the words, "Fransen Construction Co." Upon procuring a load, the load was weighed in at the trailer and the driver was given a load ticket. Both Ebel and Reichenberg reported every morning at seven o'clock and from January 27, 1941, to February 11, 1941, the day on which Reichenberg was killed, worked until they were told to quit by the man in the trailer, which was at a different time each day. The cards containing a record of the load tickets and weight and cubic yards hauled were turned in to Crouch each evening. On Crouch's local jobs Ebel testified Crouch always gave them directions on where to go and what to do and told them to keep a record of all things which they did during the day; that this was a standing order.

Leonard Stahly was Fransen's timekeeper and testified he kept daily records and made a daily report from all of the load tickets, which he picked up from Larson who had an office in a trailer and who made quadruplicate copies of each ticket. The daily report was kept at the Fransen company's direction and was a sheet which listed all of the Fransen chauffeurs' names and each truck of the hired trucks, the number of loads hauled by each and the total cubic yards. The daily report was headed "Fransen Construction Co." and listed the contractor as E. Larson. At the bottom of the sheet under "Remarks" Stahly made daily notations as to the number of hired trucks used, where the work was done and often the time at which work was completed on that particular day. Each of the Marland Cartage Company trucks was listed by the word "Marland." On several daily reports Stahly had made notations "Called union hall for 6 hired trucks, got only 4" and "Ordered 19 hired trucks for day and none

showed up but the 4 that was on yesterday." Stahly testified he did not give out the cards upon which the drivers kept their own records and did not know who gave them out.

Goss, the president of the Fransen company, testified that he gave no directions to either of Marland's drivers, but gave complete directions to Bowman, the union man, relative to the type of work, where the loads were to be picked up and where dumped, and the price to be received by each trucker for his trucks, and that these same directions he gave personally to truckers whom he himself contacted; that at no time did he give instructions to any drivers, other than his own. When asked as to who gave Marland's drivers instructions he said their employer must have and that Larson would give specific instructions when the drivers arrived at the trailer.

On February 11, 1941, Frank Reichenberg came to his death after being struck by a train while hauling gravel. On March 6, 1941, Joan Reichenberg, the daughter of Frank Reichenberg, by Ruth Madsen, her legal guardian, filed an application for adjustment of claim with the Industrial Commission, in which the caption was against A. B. Crouch, doing business as Marland Cartage Company and Fransen Construction Company, a corporation. In the body of the application the employer was alleged to be Marland Construction Company.

On December 18, 1942, at a continued hearing before the arbitrator, the application was amended and the employer alleged to be Marland Cartage Company and/or Fransen Construction Company, a corporation.

Originally there was no stipulation that the accident had occurred out of and in the course of the employment, but at a later hearing the attorney for Marland Cartage Company made the following stipulation: "We can stipulate that the deceased died as a result of an accidental injury which arose out of and in the course of his employ-

ment, but the question of employment is still in dispute." To this stipulation Fransen Construction Company made no objection and the hearing proceeded without further evidence on the question of the accident arising out of and in the course of the employment.

The arbitrator entered an award for the petitioner and against Fransen Construction Company as the employer of the deceased, Frank Reichenberg. A. B. Crouch, doing business as Marland Cartage Company, was dismissed.

On review before the Industrial Commission the award was confirmed and the superior court of Cook county confirmed this decision.

It is the contention of the plaintiff in error that:

1. The facts not being in controversy, the questions for consideration are those of law.

2. It was error to enter an award for compensation against Fransen Construction Company where such company was not the employer of the employee at the time of the injury resulting in death for which compensation is claimed.

3. It was error to award compensation death benefits where there was no evidence that the accidental injury causing death arose out of and in the course of the employment with Fransen Construction Company.

Plaintiff in error contends that the facts in the instant case are not in controversy, and, therefore, the question before the court is a question of law as to whether the evidence in the record sustains the finding of the Industrial Commission.

It is true that where the facts are not in dispute, their legal effect becomes a matter of law and the rule as to the power of the court to set aside the decision only when it is against the manifest weight of the evidence has no application. (*Puttkammer* v. *Industrial Com.* 371 Ill. 497.) We cannot agree, however, that this rule is applicable to the instant case. The question resolves itself into one

of fact as to whether or not Reichenberg was actually employed by Marland Cartage Company or was loaned to Fransen Construction Company for the purpose of permitting him to work in and about the Fransen Construction Company's business so that at the time of the accident causing his death he was an employee of the Fransen Construction Company. A determination of the relationships between the parties is dependent upon facts and circumstances which include, among other things, the question of the hiring, the right to terminate the relationship, the character of the supervision of the work done and the manner of direction of the servant. Unless these facts clearly appear, the relationship cannot become purely a question of law. *Merlo* v. *Public Service Co.* 381 Ill. 300.

In the instant case there were circumstances advanced by Fransen Construction Company tending to show that Reichenberg was the employee of Marland Cartage Company at the time of his death and there were likewise circumstances advanced in the proof which tend to show that Reichenberg, at the time of his death, was in the employ of plaintiff in error. The determination of the question of ultimate fact whether or not Reichenberg was an employee of the plaintiff in error involves a conclusion derived from a consideration of all of the evidentiary facts, in connection with the application of principles of law to a consideration of the evidence and becomes a mixed question of law and fact. *Shannon* v. *Nightingale*, 321 Ill. 168.

In the case of *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390, where there was practically no conflict in the evidence and where the same question was involved it was said that the question as to who the employer was at the time of the injury was one of fact.

Under the common law an employee in the general employment of one person may, with his consent, be loaned to another for the performance of special work and become the employee of the person to whom he is loaned

while performing such special service. (*Merlo* v. *Public Service Co.* 381 Ill. 300; *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390; *Densby* v. *Bartlett,* 318 Ill. 616.) This same principle of law applies to cases arising under the Workmen's Compensation Act. *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390.

The test in determining whether or not the workman in the performance of the special work for which he is loaned, becomes the employee of the person to whom he is loaned, is whether or not he becomes for the time being wholly subject to the control and direction of the person to whom he is loaned for the special service being performed and freed during the temporary period from the direction of the original master. *Forest Preserve District* v. *Industrial Com.* 357 Ill. 389; *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390; *Densby* v. *Bartlett,* 318 Ill. 616.

The plaintiff in error substantially agrees with the above propositions but says that their application to the facts involved clearly shows that Reichenberg, at the time of the accident causing his death, was the employee of Marland Cartage Company and not plaintiff in error. Plaintiff in error relies strongly upon the case of *Densby* v. *Bartlett,* 318 Ill. 616, and the principles therein enunciated. There one Saracino was engaged in the business of letting, for hire, automobiles fully equipped with chauffeurs employed and paid by him to drive them. The cars and the drivers were his. Saracino employed such skilled men as he was willing to trust to drive and manage his cars and never conferred upon or surrendered that authority to anyone to whom the car was rented. Bartlett was engaged in selling real estate and agreed with Saracino that Saracino was to furnish cars and drivers to Bartlett when requested for the purpose of hauling Bartlett's prospective customers to and from his subdivision. One of Bartlett's agents engaged one of the cars with a driver and, on the way, suffered an accident and the agent was injured. The

court there held that Saracino was engaged in the business of performing special service for others and while driving the car the driver was engaged in the business he was employed by Saracino to do; that there was no power in Bartlett to discharge the driver and under the circumstances no authority, in the driving and managing of the cars, was ever conferred or surrendered from Saracino to Bartlett. It was, therefore, held that Bartlett was not the employer of the driver, although so held out, but that Saracino actually was the employer. We believe the *Densby* v. *Bartlett case* distinguishable from the instant case in that the driver in that case was not wholly subject to the control of Bartlett to whom he was loaned and was not wholly freed from the control of Saracino.

We held in *Connolly* v. *People's Gas Light and Coke Co.* 260 Ill. 162, "It is true that a person who is in the general employment of one person may, with his consent, be transferred to another for some particular work in such a way as to become the servant, for the time being, of the other in doing that work, but a servant who is sent to do work which his master has agreed to perform does not become the servant of the one for whom the work is performed by having the work pointed out to him. He is the master who has the choice, control and direction of the servant * * *."

In this case Reichenberg was sent to plaintiff in error at the request of Bowman, the union agent. As Ebel testified, Crouch only told him and Reichenberg that they were going to do some hauling for Fransen and that they were going to work for the construction company; that they were to report at seven o'clock the next morning and were to find a place to park the trucks at night. These are all of the instructions that the proof shows were given to either Reichenberg or Ebel by Crouch, their original employer. Upon arriving at the Elwood reservation they were directed to the pit and were told that it was Fran-

sen's headquarters. There they were told where to pick up the load and where to proceed. At the trailer, although it does not clearly appear in the evidence by whom the man in the trailer was employed, both Ebel and Reichenberg were given instructions as to where to proceed to dump the load. It can be reasonably inferred from the testimony and from the exhibits in evidence that the cards given to the drivers, having on their face the name of Fransen Construction Company, were given to them by an employee of Fransen and that the directions as to the time of quitting on each day when sufficient loads had been hauled and the directions as to the disposition of the loads were given by Fransen, to whom Marland's drivers had been sent for directions. From the time Reichenberg and Ebel reported to Fransen until the injury resulting in Reichenberg's death, no directions whatsoever were given by Crouch to his drivers. During this period they were wholly under the control and direction of Fransen as to time for beginning work, the source of the gravel, the destination thereof and the time for quitting.

The daily reports made by Stahly and the remarks appended thereto indicated a measure of supervision over the hired trucks. In fact, Goss, the president of plaintiff in error, testified that the twenty cents difference between what was paid for the hired trucks and the amount billed by him to Larson was for expenses, including supervision. The fact that the wages of Ebel and Reichenberg and the gas and oil used by them were paid by Crouch would not determine that Crouch was the employer for the special service involved. *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390; *Indian Hill Club* v. *Industrial Com.* 309 Ill. 271.

It is true that plaintiff in error had no authority to discharge Crouch's drivers, insofar as Crouch was concerned, but if dissatisfied with either of them could have refused to allow them to haul further loads, which implies the power to discharge or terminate employment, so far

as plaintiff in error was concerned. This same feature was present in the case of *Shannon v. Nightingale,* 321 Ill. 168. It is impossible to avoid the fact that plaintiff in error had full power and authority to direct the movement of every load hauled by Ebel or Reichenberg. The case of *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390, similar on many of the facts involved in the instant case, is quite persuasive. There a crane and operator were furnished by Swift & Co. to Allen-Garcia Co. for use by the latter in work done for Donk Bros. Coal & Coke Co. The operator's wages were paid by Swift & Co. and, during the time the operator was loaned to Allen-Garcia, Swift & Co. ordered his return to that company and after a short time he was again returned to Allen-Garcia. All of the operator's directions relative to the time for beginning work, the time for quitting and the objects to be moved or handled by the crane were given by agents for Allen-Garcia Co. The question there, likewise, was by whom the operator on the job was employed. The court found that Allen-Garcia was his employer for the time being.

Under the provisions of the Workmen's Compensation Act it becomes necessary to consider the evidence contained in the record, but this court will not substitute its judgment for that of the Industrial Commission upon questions of fact, particularly where it has received the endorsement of the superior court, unless the judgment is clearly and manifestly against the weight of the evidence. *American Smelting and Refining Co.* v. *Industrial Com.* 353 Ill. 324; *Chicago and Illinois Midland Railway Co.* v. *Industrial Com.* 362 Ill. 257.

It is not the province of this court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission and disturb the findings thereof unless the court can say that the finding of the commission is manifestly against the weight of the evidence. (*Chicago and Illinois Midland Railway Co.* v. *Industrial Com.* 362

Ill. 257; *Murrelle* v. *Industrial Com.* 382 Ill. 128; *Rosenfield* v. *Industrial Com.* 374 Ill. 176.) Under the proof submitted it cannot be said that the findings of the Industrial Commission are manifestly against the weight of the evidence. The Industrial Commission may act on reasonable inferences arising from undisputed or established facts. *Rosenfield* v. *Industrial Com.* 374 Ill. 176.

We feel from the testimony in this record that the judgment of the superior court of Cook county confirming the award of the Industrial Commission was correct and that judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.