(No. 50377.-

ABUNDIO SALDANA, Appellee and Cross-Appellant, v. WIRTZ CARTAGE CO. *et al.,* Appellants and Cross-Appellees.

*Opinion filed December 4, 1978.*

380

382

WARD, C.J., took no part.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Wyatt Jacobs, Barry L. Kroll, and David A. Novoselsky, of counsel), for appellants.

Fred Lambruschi, of Chicago (Herbert P. Veldenz, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Abundio Saldana, brought this action in the circuit court of Cook County to recover for personal injuries he suffered when he was struck by a truck operated by defendant Roy Fitzsimmons, a driver for defendant Wirtz Cartage Company (Wirtz). The jury returned a verdict for both defendants, and the circuit court entered judgment accordingly. The appellate court reversed (55 Ill. App. 3d 440), finding that a special interrogatory submitted to the jury should have been accompanied by explanatory instructions and that this error required a new trial. We granted defendants leave to appeal.

Although Fitzsimmons was employed as a driver for Wirtz, he had been instructed to take a Wirtz truck and report to Allied Asphalt Paving Company (Allied). On November 14, 1970, he reported to Allied's dispatcher, who directed him to haul asphalt to its paving site on Landwehr Road near Northfield. Fitzsimmons testified that after he was assigned to Allied by Wirtz, Allied decided what and where he was to haul and that he received orders and directions only from Allied's foreman. A dispatcher for Wirtz also testified that Wirtz exercised no supervision over Fitzsimmons and that he was "taken over" by Allied or their foreman. If Allied was not satisfied with a driver such as Fitzsimmons, it could request another. Allied paid Wirtz for the truck and driver, and Wirtz paid Fitzsimmons weekly. Plaintiff was designated by Allied as a "dumpman" on a paving crew which was working at the Landwehr Road site. His job was to guide dump trucks as they backed up to a Barber-Greene asphalt paving machine, open the tail gates, signal the

drivers to raise the truck bed, signal the trucks to move out, and sign reports to verify that the trucks had been unloaded. During the afternoon of November 14, plaintiff guided Fitzsimmons as he backed the truck up to the Barber-Greene machine and then signaled him to raise the bed. At that time, another driver, Jack Moore, came up to plaintiff to get his report signed. Plaintiff walked toward the front of the truck to meet Moore. As plaintiff was signing the report, Fitzsimmons pulled away from the machine. Plaintiff was positioned so that a rear tire struck his leg, causing him to fall down in such a way that his right foot was pinned under the wheel and injured. Fitzsimmons testified that plaintiff had signaled him to pull out but plaintiff denied doing so.

At trial, defendants asserted that they had exercised due care and that plaintiff was contributorially negligent. In addition, the defendants relied upon the "loaned employee" defense, which is based on the principle that an employee loaned by a "general" employer to a borrowing or "special" employer is in the same position as any other of the special employer's regular employees, *i.e.*, he is entitled to workmen's compensation benefits from the special employer but he has no right to bring a common law negligence action against it or a fellow employee. After the evidence had been heard, defendants maintained that they had proved the loaned-employee defense as a matter of law while plaintiff contended that Fitzsimmons was not shown to be a loaned employee, also as a matter of law. The trial court, however, decided that this was a question of fact and, at defendants' request, submitted to the jury the following special interrogatory:

> "Was the defendant, ROY FITZSIMMONS, at the time of the occurrence wholly subject to the control and direction of the ALLIED ASPHALT PAVING COMPANY and free during such time from the direction and control of WIRTZ CARTAGE COMPANY?"

together with a special interrogatory as to plaintiff's contributory negligence. Plaintiff, at the instructions conference, objected to the quoted interrogatory because he continued to maintain that Fitzsimmons was not a loaned employee as a matter of law. Neither plaintiff nor defendants requested or tendered instructions on this question and none were given. The jury found that plaintiff was not contributorially negligent, but it answered the other interrogatory affirmatively, finding that Fitzsimmons was wholly subject to the control and direction of plaintiff's employer, Allied. The jury also returned a general verdict against plaintiff.

On appeal, plaintiff alleged several trial errors which were not considered by the appellate court. While that court reversed, it did so on grounds which were neither raised nor argued by the parties—the failure of the trial court to instruct the jury on the meaning of "control and direction" as those terms were used in the special interrogatory. Other than for jurisdictional reasons a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment. "[W]hile this court will examine the record for the purpose of affirming a judgment it will not do so for the purpose of reversing it ***" (*People ex rel. Akin v. Southern Gem Co.* (1928), 332 Ill. 370, 372), for when an appellant seeks reversal, "theories not pursued nor advanced with citation of authorities are deemed waived" (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242, citing *Mitchell v. Van Scoyk* (1953), 1 Ill. 2d 160, 164).

Here, even if the terms "control and direction" should have been defined, the error was not preserved for review. No request for a defining instruction was made and no such instruction tendered. The appellate court quoted only an isolated segment of the record—"Your Honor, I object to the interrogatory, He has taken a position, Your Honor—Is it a matter of law?", finding, on the basis of this

quotation, that "it is evident from the record that counsel was at this point objecting to the interrogatory \*\*\* because of the lack of explanatory instructions." (55 Ill. App. 3d 440, 445.) The quoted statement by counsel together with others in the context from which it was taken, clearly demonstrated that plaintiff objected to giving the interrogatory solely because he felt that the loaned-servant question on the facts of this case was a matter of law. Nor does the record before us contain any mention of failure to give accompanying instructions. Special interrogatories must be tendered, objected to, ruled upon and submitted to the jury in the same manner as are instructions. (Ill. Rev. Stat. 1973, ch. 110, par. 65.) To preserve an objection to an interrogatory as well as to an instruction, one must set it forth with specificity so the trial court is advised of the specific nature of the objection before ruling. (Supreme Court Rule 239(b), 58 Ill. 2d R. 239(b); *Delany v. Badame* (1971), 49 Ill. 2d 168, 178; see *Havlovic v. Scilingo* (1972), 7 Ill. App. 3d 918.) Additionally, even if plaintiff had properly objected, he is still required to tender a proper instruction. Supreme Court Rule 366(b)(2)(i), 58 Ill. 2d R. 366(b)(2)(i); *Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 127, *cert. denied* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072.

Plaintiff contends that he was taken by surprise by defendants' assertion of the "loaned employee" defense three days before trial. We note, however, that the instructions conference was not held until six days after this defense was first raised; that period does not seem to us an unreasonably short time within which to prepare those instructions plaintiff considered proper.

Moreover, while unnecessary to our disposition of this case, we note our serious doubt of the necessity or wisdom of attempting to further define the terms "control and direction." Those words are, if anything, less technical

than the phrase "having charge of," and this court has held that phrase one of common usage and understanding and that further attempts at definition can only lead to confusion and error. (*Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 526; *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119.) "It is well established that the meaning of words, used in their conventional sense, need not be defined or explained in giving instructions to the jury." *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323.

Plaintiff states in his brief that, "[a]dmittedly, the opinion of the Appellate Court was on a point not raised by the plaintiff," but contends that we should affirm nonetheless because the result is correct on other, properly preserved grounds which were briefed and argued in the appellate court.

Plaintiff first contends that the trial court erred in refusing to rule that Fitzsimmons was not a loaned servant as a matter of law. At common law, the rule that an employee cannot recover for the negligence of his fellow employee (see, *e.g., Honner v. Illinois Central R.R. Co.* (1854), 15 Ill. 550) applied as well to a loaned employee. (*Pioneer Fire-Proofing Co. v. Clifford* (1906), 125 Ill. App. 352, *aff'd* (1907), 232 Ill. 150; see *Illinois Central R.R. Co. v. Cox* (1858), 21 Ill. 20.) This principle has been applied to Workmen's Compensation Act cases so that one injured while working for the special or borrowing employer is entitled to receive workmen's compensation benefits from that special employer (*Raymond Concrete Pile Co. v. Industrial Com.* (1967), 37 Ill. 2d 512; *American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 449), but as earlier noted the Act bars negligence actions by an employee against his special employer or another employee (Ill. Rev. Stat. 1969, ch. 48, pars. 138.1(a)(4), 138.5; *Highway Insurance Co. v. Sears, Roebuck & Co.* (1968), 92 Ill. App. 2d 214; see 1B A. Larson, Workmen's

Compensation sec. 48.10, at 8–205 (1978).) The main criterion for determining when a worker becomes a loaned employee is whether the special employer has control of the employee's services. (*M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 116.) "The leading case in this State is that of *Allen-Garcia Co. v. Industrial Com.* 334 Ill. 39. In that case we held that the Workmen's Compensation Act should be liberally construed to bring persons within the term 'employer-employee,' and held that where a mining company contracted with an engineering company for certain work on a cost plus basis, and required the use of a crane, which the mining company secured from a third company, which furnished both it and the engineer, the operator of the crane became an employee of the engineering company using the crane, where he was subject to the direction of that company while using it, notwithstanding the coal company paid his wages. We followed and approved the *Allen-Garcia case* in *Fransen Construction Co. v. Industrial Com.* 384 Ill. 616." *American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 449, 454.

In *Fransen Construction Co. v. Industrial Com.* (1943), 384 Ill. 616, Fransen Construction requested the Marland Cartage Co. to send to a construction site trucks with drivers for the purpose of hauling gravel. Fransen paid to Marland Cartage a flat rate of 50 cents per cubic yard of gravel hauled. Marland Cartage paid its drivers directly. It did not supervise the drivers but merely sent them and the trucks to Fransen Construction. The drivers were told where to get their loads and directed where to dump them by Fransen's employees. The court held that the question of whether or not a driver, killed on the job, was a loaned employee was one of fact, and it upheld a finding that the driver was a loaned employee of Fransen Construction, a special employer.

It is clear that the issue of whether there is an

employer-employee relationship, and more specifically the question of control, ordinarily "presents a question of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction of the services. *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300." (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 123; see *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 255.) The facts of this case present nothing to justify a departure from this rule.

Plaintiff contends that the trial court erred in permitting defendant to file an amended answer three days before trial, denying an agency relationship between defendants Fitzsimmons and Wirtz, because, asserts plaintiff, defendants admitted the agency relationship in their first answer. The record indicates that plaintiff alleged in two separate paragraphs that "defendant ***, by its agent *** Roy Fitzsimmons, *** caused [a vehicle] to collide into and against plaintiff ***" and "defendant ***, by its agent *** Roy Fitzsimmons, *** was *** guilty of the following acts of negligence ***." In answering the first, defendants specifically denied causing a collision, and in response to the second, defendants denied "each and every allegation." We doubt that defendants may fairly be said to have admitted the agency, but, in any event, a defendant may be permitted to amend his pleadings to change or add a defense at any time prior to final judgment. (Ill. Rev. Stat. 1973, ch. 110, par. 46(1).) "The trial court has a broad discretion with respect to allowance of amendments to pleadings prior to the entry of final judgment ***." (*Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 8.) We find no abuse of that discretion here.

Plaintiff also asserts error in the refusal to admit evidence of the custom and practice in the paving industry regarding the signals and duties of a dumpman. Any error

in that refusal cannot have been prejudicial, however, since plaintiff's testimony to the same effect was not disputed. The controversy here was not whether defendant should have awaited plaintiff's signal—rather, it was whether he had done so.

Plaintiff also objects to the showing of a movie of the Barber-Greene in action since it was taken in a parking lot where the paving crew's movement was in a large open area rather than on a road. However, the fact that photographic evidence portrays something under conditions not precisely the same as those at the time of the occurrence does not necessarily render it inadmissible, so long as the jury is not misled. (*Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 105, citing 3 Jones, Evidence sec. 17:53 (6th ed. 1972).) Here the jury was admonished not to consider the movie as a re-creation of the conditions of the incident, and not to consider the movements of the crew, but that the film was being shown only to demonstrate to the jury just what this unfamiliar machine, about which much testimony was given, looked like and how it performed. Additionally, the freedom of movement around the machine is principally relevant to the issue of plaintiff's due care. Since the jury found plaintiff not to be contributorially negligent, the movie could not have been prejudicial even if its admission was error.

Plaintiff next argues that evidence introduced by defendants tended to portray plaintiff as a person of some affluence and so prejudiced the jury that plaintiff was denied a fair trial. Plaintiff had returned to Mexico following his injury and operated a supermarket there. He claimed an impairment of future earning capacity in that his income from the supermarket was less than he would have earned at Allied. The issue relating to plaintiff's income became unclear when he, after testifying that his income was a certain amount, added that his books were inaccurate because of false entries made in order to deceive

the Mexican authorities. Plaintiff's objection at trial came when defendant sought to introduce a photograph showing that plaintiff's store in Mexico was a modern supermarket. The trial court noted that plaintiff had in fact invited such evidence, stating to plaintiff's counsel, "I told you in chambers if we didn't get to the question of how good the store was or anything else, then I would not let him do this. But you got up and said that he and his wife were making $80.00 a week in that store." A plaintiff may testify to his earnings following an injury, but the defense is entitled to dispute that testimony with relevant proof. That proof does not become inadmissible simply because it shows greater means than have been testified to.

Finally, plaintiff maintains that the trial court erred in refusing a portion of an instruction tendered by plaintiff. Plaintiff's instruction No. 4, Illinois Pattern Jury Instructions, Civil, No. 20.01 (2d ed. 1971), as given by the court, reads in part:

> "The plaintiff claims he was injured and sustained damage while exercising ordinary care and that the defendants were negligent in one or more of the following respects:
>
> Failed to keep a proper lookout;
>
> Failed to keep their motor vehicle under proper control;
>
> Moved their motor vehicle without obtaining the proper signal to do so."

The trial court refused this fourth allegation of negligence tendered by the plaintiff: "Failed to give to the plaintiff suitable, sufficient or proper notice of their intention to move the motor vehicle." This allegation does not appear in plaintiff's complaint, it largely duplicates the others, and we perceive no prejudicial error in its refusal. Plaintiff's theory of the case was that the truck should not move at all until plaintiff gave the signal. The instruction, in our judgment, adequately implemented plaintiff's theory.

The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. CHIEF JUSTICE WARD took no part in the consideration or decision of this case.