BITUMINOUS CASUALTY CORPORATION *et al.*, Plaintiffs-Appellees, *v.* EDWARD WILSON *et al.*, Defendants-Appellants (Edward Wilson, Plaintiff-Appellant, *v.* Frisch Contracting Service Company, Defendant-Appellee).

Second District   No. 82—1026

Opinion filed November 10, 1983.

Walter J. Binder, Jr., of Abbamonto, Szura & Binder, of Cary, for appellant.

James A. Campion, of Holstrom & Green, of Woodstock, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Edward Wilson, who is the plaintiff in a common law negligence suit against defendant Frisch Contracting Service Company (Frisch), and a defendant in a separate suit for declaratory judgment brought by Frisch and Bituminous Casualty Corporation (Bituminous), against him and T.C. Bakas & Sons (Bakas), not a party to this appeal, appeals from an order in the declaratory judgment suit finding that any remedy he might have is pursuant to the Workers' Compensation Act and from a subsequent order in the negligence suit based upon that finding dismissing his complaint.

Wilson raises the following issues for our review: (1) whether the trial court erred in finding the person who allegedly injured him was a loaned employee to Wilson's employer, T.C. Bakas & Sons; (2) whether the question of loaned employee status should have been decided in a jury trial; and (3) whether the trial court erred in deciding the ultimate issue in the pending negligence suit in the declaratory judgment action.

Since the procedural background of the matter as reflected in the record is somewhat unusual, we set forth this history and the pertinent facts. On April 21, 1976, Wilson filed his complaint based upon common law negligence against Frisch alleging that an employee or agent of Frisch (Jerome Kehl) was negligent in the operation of an endloader and on September 11, 1974, injured Wilson who was employed and working as a welder for Bakas. Frisch answered the complaint generally denying all the allegations of the complaint, requesting a jury trial, and the parties thereafter filed various discovery documents. On April 7, 1978, Frisch and Bituminous, who was Frisch's liability carrier, filed a separate complaint under a new file number for declaratory relief against Wilson and Bakas seeking a declaration that Wilson was a fellow employee of Jerome Kehl, that Wilson, as a fellow employee of Kehl, was excluded from coverage under the terms of its policy with Frisch, and that Wilson's exclusive remedy was under the Workers' Compensation Act. Wilson answered the complaint and, after numerous continuances, the case was set for trial on May 15, 1980. No jury demand by either party appears in the trial court record of the file for this declaratory judgment action. On May 15 this case proceeded to trial before the court without a jury.

Gregg Bakas, who was president of Bakas in September 1974, testified that in September 1974 Bakas was a subcontractor on a job and was to put in railroad spurs in Cary, Illinois; that he arranged to

rent from Frisch certain equipment and an operator for the job; that he advised Frisch that the Frisch employee, Jerome Kehl, was to report to the Bakas supervisors to be told what and how to do the job; that a Bakas foreman supervised the job, and as a part of his supervision, he would direct Kehl and tell him how thick to put the stone and how to pick up rails and move them, just like he would for Bakas employees; and that Bakas paid Frisch $1,428.88 for Kehl's services and equipment rental.

Jerome Kehl testified that he was employed by and on the payroll of Frisch in the fall of 1974; that he operated heavy equipment and did some incidental laboring; that on September 10, 1974, he reported to the job site where a spur line was being put in; that when he arrived at the job site a Bakas employee told him what work Bakas was doing at the site, what his job was, and that he should follow the instructions of the men there; that while on the job site he was told what to do by the "Bakas people" and in what manner to do it; that he worked at the site September 10 and 11; that on September 11, the date of the accident to Wilson, he was dumping stone over the rails and ties, so that Bakas employees could lift them up, and backdragging to leave a smooth surface; that on September 10 he also carried ties in the endloader; that he did this work in the order that "Bakas people" told him; that no other Frisch employees were at the job site during his work; that he was originally instructed by Marvin Frisch to contact the "Bakas people" who were to tell him what to do; that his time sheets showed that he spent eight, five, two, and one-half hours at the job site from September 10 through September 13 respectively; that when he left work on September 11 he left because "Bakas people" told him that was all the work required of him that day; and that at no time during work on that job did Frisch personnel come over and direct him in the manner in which he was to do anything and that he was entirely supervised by "Bakas people." On cross-examination he stated that "Bakas people" had to tell him how to dump stone over the rails since he had never done that on a railroad spur job before; that this job was more difficult because he was working with different material than normal and Bakas wanted it set and dragged in a certain way; that he was in Bakas' complete supervision; that the Bakas foreman could tell him to go home or fire him from the job site; and that no one had to tell him how to operate the machinery although they did tell him what to do with the stone and railroad ties.

Marvin Frisch, president of Frisch, testified he was contacted by Bakas and agreed to rent equipment and an operator, at a specified

hourly rate, to move railroad ties, railroad rails, and to place ballast; that he told Kehl to report to the site and get his directions while there from "Bakas people"; that Frisch had no contract itself in regard to the spur line job; that Frisch personnel did not supervise Kehl while he was on the job site; that it is normal in his business when they send people out on an hourly basis to have "no direction and control over it," and that it is the custom in the business in this situation for the employee to take his direction and control from the other party and not Frisch; and that he would think the lessee would be able to send back equipment or an operator if dissatisfied, but had never had the precise circumstance occur. On cross-examination he stated that on many occasions he rented out equipment and men and that it is normal in the usual course of business to send out an employee on an hourly basis to the job site of another who was not an employee of Frisch's.

Gregg Bakas was recalled as a witness and testified that he never discussed with Frisch the right to fire one of its employees off the job site; that he felt he did not have that authority; and that he could tell such an employee to stop work if he was doing something Bakas did not want him to do.

Following the May 15, 1980, hearing, the next entry in the record is a notice of motion filed on February 26, 1982, by Wilson requesting a ruling on the "motion for summary judgment previously filed." The next entry in the record is a notice filed on October 8, 1982, by Frisch and Bituminous moving the court to enter an order which was stated to be attached. The next entry is an order continuing the Frisch and Bituminous' motion to October 15, 1982. On October 15, 1982, the trial court entered a written order which stated, *inter alia*, that the cause had come on for hearing on a motion for summary judgment and that the court had heard testimony. The court then found that Kehl was a fellow employee of Wilson and therefore that Wilson's exclusive remedy was pursuant to the Workers' Compensation Act. In oral argument, all parties agree that the references to a motion for summary judgment are in error and that the declaratory judgment action was decided in a bench trial.

On October 15, 1982, upon Frisch's and Bituminous' motion to dismiss based upon the finding in the declaratory judgment suit, the trial court dismissed Wilson's negligence action.

On November 12, 1982, Wilson filed identical motions in both suits asking that the October 15, 1982, order in the declaratory judgment suit be vacated, alleging, for the first time, that it was improper to determine the ultimate issue of the pending negligence suit in the

declaratory judgment action. The motions were both denied.

██ Wilson first contends that the trial court abused its discretion by granting declaratory judgment on the issue of whether or not Kehl was a loaned employee where that determination was the ultimate issue of fact in an underlying and separate negligence action brought by him. While we are familiar with general principles of law in that regard, which are set forth in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, and *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, and while trial courts should adhere to these procedural practices, Wilson made no such contention in the trial court until his post-trial motion which was filed some four weeks after the court's decision and approximately 2½ years after the trial. Hence, any possible error was waived. (*Allstate Insurance Co. v. Elliott* (1980), 89 Ill. App. 3d 140, 143, 411 N.E.2d 1072; *Byron Material, Inc. v. Ashelford* (1975), 34 Ill. App. 3d 301, 306, 339 N.E.2d 26.) Throughout most of the trial court proceedings, Wilson acquiesced in the procedure which determined the rights of the parties in the declaratory judgment action. Not until after the trial court had entered its order deciding the issues did Wilson object to the procedure. We conclude that this acquiescence, in effect, invited any error which might inhere in this procedure and precludes Wilson from complaining now. See *In re Marriage of Davies* (1983), 95 Ill. 2d 474, 477-78, 448 N.E.2d 882.

██ Although Wilson also claims he was denied a trial by jury in the declaratory judgment action, it is clear in this record that he failed to file a jury demand in that suit which therefore waives his right to a jury. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1105; see *Fox v. Fox* (1956), 9 Ill. 2d 509, 513-14, 138 N.E.2d 547.) Where a declaratory judgment proceeding requires the determination of issues of fact triable by a jury they shall be tried and determined in the same manner as in other civil actions. (Ill. Rev. Stat. 1981, ch. 110, par. 2—701(d); see *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 148, 199 N.E.2d 797.) Here, Wilson, by not filing a jury demand and by proceeding to trial on the issue involved, without requesting a jury, waived his right to a jury. See *Fox v. Fox* (1956), 9 Ill. 2d 509, 513-14, 138 N.E.2d 547; *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 624, 350 N.E.2d 249.

██ Turning to the question of whether Kehl, an employee of Frisch, was a loaned employee to Bakas, we reiterate the applicable, well-settled principles of law. An employee in the general employment of one person may be loaned to another for the performance of special work and become the employee of the person to whom he is loaned

while performing the special service. (*A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 346-47, 412 N.E.2d 477; *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) The main criterion for determining when a worker becomes a loaned employee is whether the special employer has control of the employee's services. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 389, 385 N.E.2d 664.) The question of control ordinarily presents a question of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction. (74 Ill. 2d 379, 389-90, 385 N.E.2d 664.) However, the mere fact that the employee does not receive his wages from the special employer will not defeat the finding of a loaned-employee situation. *A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 349, 412 N.E.2d 477.

Here, the evidence established that Frisch personnel were not on the job site and did not supervise Kehl's work, that Kehl worked the number of hours each day as directed by Bakas, that Kehl was told by Frisch to get his directions from the "Bakas people," that "Bakas people" told Kehl what to do, that "Bakas people" had to tell Kehl how to do certain job functions since Kehl had never done a railroad spur job before, and that Kehl could be required to stop work at the site or be replaced for this job at the direction of Bakas. The fact that Kehl exercised control over the equipment and was on the payroll of Frisch is insufficient to preclude a finding that Bakas had the right to control the manner of the work and a finding of a loaned-employee situation. (See *A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 349, 412 N.E.2d 477.) While it has been generally stated that a person cannot become an employee of the second employer unless the second employer has the power to discharge or fire the employee (*Connolly v. People's Gas Light & Coke Co.* (1913), 260 Ill. 162, 166, 102 N.E. 1057; *Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719, 394 N.E.2d 1230; *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 832, 383 N.E.2d 1242), Bakas could stop Kehl's work and have Frisch replace him which implies the power to discharge or terminate employment, so far as Bakas was concerned. See *Fransen Construction Co. v. Industrial Com.* (1943), 384 Ill. 616, 627-28, 52 N.E.2d 241.

■■ ■ The question of control ordinarily presents a question of fact (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 390, 385 N.E.2d 664), and a reviewing court will reverse only when that decision is against the manifest weight of the evidence. (*M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 117, 311 N.E.2d 161;

*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719, 394 N.E.2d 1230.) Under the facts here, the evidence supports the trial court's finding that Kehl was a loaned employee. The decisions in *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60, and *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill. App. 2d 739, 272 N.E.2d 513, chiefly relied upon by Wilson, do not persuade us otherwise. In both cases, the trier of fact found that no loaned-employee situation existed. Those findings were ultimately upheld on review as questions of fact for the jury which were supported by the evidence, and were not, as a matter of law, incorrect. Similarly here, the question is one for the trier of fact, and we conclude there was ample evidence of the exercise of control by Bakas over Kehl to support the trial court's finding that Kehl was a loaned employee of Bakas.

For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.