DUANE CASEY, Plaintiff-Appellee, v. E. J. CATTANI & SON GRAVEL, a/k/a Cattani Trucking Company *et al.*, Defendants-Appellants.

Third District   No. 3—84—0101

Opinion filed May 8, 1985.

Anthony C. Raccuglia & Associates, of Peru, for appellants.

Brian P. Thielen and Peter F. Ferracuti, both of Peter F. Ferracuti, P.C., of Ottawa, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

E. J. Cattani & Son Gravel (hereinafter Cattani) appeals from the judgment of the circuit court of La Salle County, after a bench trial, finding for plaintiff Duane Casey. Casey had filed a negligence action against Richard Koch and Cattani, based upon injuries he received while on a construction site. Cattani's liability was premised upon the court's conclusion that Koch was an employee of Cattani, and not a loaned servant to Phalen Steel Erectors (hereinafter Phalen) at the time of the accident and resultant injuries. Judgment in favor of Casey, and against Koch and Cattani, in the amount of $85,000 was rendered. On appeal, Cattani contends: (1) that the court incorrectly interpreted the law concerning loaned servants in this case; (2) that the court's decision finding Koch to be an employee of Cattani was contrary to the manifest weight of the evidence; (3) that the court's decision finding Koch negligent was contrary to the manifest weight of the evidence; and (4) that the court erred in not assigning some degree of negligence to plaintiff Casey under a comparative negligence analysis.

The pertinent facts from the record indicate that on February 12, 1979, Casey was working as an ironworker for Phalen at a construction site in Peru. He had been on the job for about one week, and was assisting in the transportation of metal sheeting for placement on the roof of the building under construction. Casey was standing on the back of a flatbed truck driven by defendant Koch. The truck was positioned next to the building under construction, so that a crane could pick the roofing material bundles off the flatbed and hoist them to the roof. Casey would rig the sling around the bundles, and also signal the crane operator to begin the hoist. Two other ironworkers were positioned on the roof, to unhook the bundles.

According to Casey's testimony, several bundles had been lifted off the truck, and he was standing on the back of the trailer facing the cab, waiting for the sling to return. Then, suddenly and without warning, the truck jerked forward. He fell and injured his right elbow. Casey testified at trial that no signal was given for the truck to move, nor was any warning given to him by the driver prior to the sudden movement. No one else saw the truck move at all, although the foreman on the job did testify he observed tire tracks in the snow behind the truck after the accident. It was disputed whether those tracks were made prior to the time of Casey's injuries. Truck driver

Richard Koch denied moving the truck at all, and denied ever moving the truck without specific directions from the Phalen foreman or signalman.

Casey's other evidence came from co-workers who saw him immediately after the accident, although, as already noted, none of them testified they actually observed the truck move. The co-workers did testify that they had seen no signal, nor heard any warning given by the truck driver before Casey's fall.

Other testimony related to the issue of whether driver Koch, at the time of the accident, was a loaned servant of Phalen. The trial court determined that Koch was not a loaned servant of Phalen, but remained under the general employment of Cattani. Cattani therefore had liability for his negligence, under accepted agency principles. Had the court determined that Koch was a loaned servant of Phalen, Casey would have had no action against Cattani, but would have been limited to his workmen's compensation recovery as against Phalen. The evidence before the court indicated that Cattani was the owner of the flatbed truck and trailer which was being operated on the day of the accident by Koch. Cattani is in the equipment rental business, and their leases of equipment include operators for their equipment. In the instant case Phalen leased both the truck and its operator, Koch, for a set hourly or weekly amount. Testimony indicated that Cattani remains responsible for maintaining its equipment while leased, and that it pays the salary of its operators. Charges for maintenance and for salary are passed on to borrowing employers, through the leasing charge. Testimony from Cattani's president indicated that one of the purposes in using their own drivers on leased equipment is to see to it that equipment is well taken care of and not abused during operation. Testimony also indicated that Koch was responsible for inspecting his truck, seeing to its repairs, and general servicing, all on behalf of and for the benefit of Cattani. Cattani's president indicated that a certain amount of control is maintained over employees sent out with leased equipment, stating that he had the power and authority to fire any employee on a given day if that employee was not performing as required. He also indicated that occasionally he observed his employees on the jobs to which they were sent, although there was no testimony that he had observed the defendant Koch at the Phalen jobsite. Cattani testified that he retained the authority to dismiss any of his operators from a jobsite, regardless of the wishes of the lessee.

Other evidence, favoring Phalen's position with respect to Koch's status, indicated that Phalen also had the power to discharge Koch, at least to terminate his employment on their jobsite. Testimony indi-

cated that Koch was working with employees of Phalen on this jobsite and that he took directions on the jobsite from Phalen's foreman, Dave Dilbeck. Cattani had no personnel on the jobsite, and no directions for work to be performed on the jobsite were given to Koch by Cattani personnel. In summary, the evidence established that this was the usual situation with respect to the lease of both operator and equipment. The general employer of the operator of the leased equipment pays the wages of the operator, retains authority to fire him from its employ, and directs him with respect to general maintenance and care of the equipment. His on-the-job duties, however, are directed by the borrowing employer, who has the authority to direct and control the operator on its jobsite. In the instant case the trial court reviewed the evidence in the record with respect to factors affecting the status of driver Koch. The court determined that Cattani did not relinquish control over Koch to Phalen but in fact exercised control for its interest and benefit. The court found that Koch was an employee of Cattani, and not a loaned employee of Phalen at the time of the accident. On this basis, judgment was entered in favor of plaintiff Casey against Koch and Cattani. From this judgment Cattani appeals.

■ The first issue raised by Cattani is whether the trial court misinterpreted the applicable law. Cattani contends that the trial court incorrectly determined that Casey was entitled to judgment in his favor, as a matter of law. Based upon its assertion that the trial court misconstrued the applicable law, Cattani requests that the matter be remanded for a new hearing on the merits. We disagree. Our review of the record, including the trial court's considerable comments about his decision, indicate that he correctly understood the law applicable in the instant case. In his comments to the parties, the trial judge reviewed the various factors which he had considered in arriving at his decision, as set forth in the applicable case law. (*Gundich v. Emerson-Comstock* (1960), 21 Ill. 2d 117, 171 N.E.2d 60; *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill. App. 2d 739, 272 N.E.2d 513; *Bituminous Casualty Corp. v. Wilson* (1983), 119 Ill. App. 3d 454, 456 N.E.2d 696.) As those cases all indicate, the main criterion for determining when a worker becomes a loaned employee is whether the special employer has control of the employee's services. The trial court indicated its understanding of that test, and further that the question of control is ordinarily a question of fact for the fact finder. In statements explaining the decision, the court indicated that the basis for his conclusion as to Koch's status was his finding that Cattani did not relinquish control over Koch to Phalen.

There is no suggestion in his comments that his decision is based upon his belief that Casey was entitled, as a matter of law, to a judgment in his favor merely because of the circumstances that both operator and equipment had been leased.

■ The next issue is whether the court's decision, finding that Koch remained in the general employ of Cattani, was contrary to the manifest weight of the evidence. The general rule applicable in such situations is well established.

> "An employee in the general employment of one person may be loaned to another for the performance of special work and become the employee of the person to whom he is loaned while performing the special service. (*A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 346-47, 412 N.E.2d 477; *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) The main criterion for determining when a worker becomes a loaned employee is whether the special employer has control of the employee's services. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 389, 385 N.E.2d 664.) The question of control ordinarily presents a question of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction. (74 Ill. 2d 379, 389-90, 385 N.E.2d 664.) However, the mere fact that the employee does not receive his wages from the special employer will not defeat the finding of a loaned-employee situation. *A.J. Johnson Paving Co. v. Industrial Com.* (1980), 82 Ill. 2d 341, 349, 412 N.E.2d 477." (*Bituminous Casualty Corp. v. Wilson* (1983), 119 Ill. App. 3d 454, 459-60, 456 N.E.2d 696.)

As this court noted previously:

> "The question of control ordinarily presents a question of fact (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 390, 385 N.E.2d 664), and a reviewing court will reverse only when that decision is against the manifest weight of the evidence. (*M & M Electric Co. v. Industrial Com.* (1974), 57 Ill. 2d 113, 117, 311 N.E.2d 161; *Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719, 394 N.E.2d 1230.) *** *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill. App. 2d 739, 272 N.E.2d 513." *Bituminous Casualty Corp. v. Wilson* (1983), 119 Ill. App. 3d 454, 460-61, 456 N.E.2d 696.

In the *Robinson* case, which is similar on its facts to the instant case, we quoted with approval the Restatement (Second) of Agency sec. 227, Comment c (1958):

"Factors to be considered. Many of the factors stated in Section 220 which determine that a person is a servant are also useful in determining whether the lent servant has become the servant of the borrowing employer. Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist."

In the instant case, the evidence indicated that Cattani retained authority to fire Koch from its employ, or to discharge him from this particular job. Cattani also hired Koch, as its employee, and paid his wages. Concerning the manner in which he was to operate the truck on the job, it is clear that the broad parameters of the use of the truck were those set forth by his general employer, Cattani, consistent with its ownership of the truck. Specific directions on the jobsite were made by personnel for the borrowing employer, Phalen. It was also evident from the testimony that the general employer could have substituted another driver for the equipment, at any time, and that the period of anticipated employment was short. Furthermore, as the trial court found, Koch, as the driver of this truck, was to be accorded status as a specialist. Finally, as Cattani admitted, it expected and required its employees to protect its interest in the use and value of the equipment, especially where those interests might be jeopardized by directions from borrowing employers with respect to the use of the equipment. Essentially similar facts were before this court in *Robinson*, and we determined there that the verdict in favor of the plaintiff was not contrary to the manifest weight of the evidence. Similarly, in the instant case, we think the evidence was sufficient to support the trial court's judgment.

The third issue before this court on appeal is whether the trial court's conclusion that Koch was negligent is contrary to the manifest weight of the evidence. The central evidence in the record indicating negligence on the part of Richard Koch is the testimony by the plaintiff Casey. Casey testified that the truck was moved, without warning, and contrary to safe procedures, by the defendant driver Koch. He also testified that as a result of the movement of the truck, and without warning, he fell and sustained injuries. For his part, defendant Koch admitted that movement of the truck would be dangerous without warning, but he denied that he would have moved the truck absent express direction from the Phalen foreman. It is evident that there was a dispute in the evidence on the issue of negligence, and it is apparent from the court's decision that it was resolved in fa-

vor of the plaintiff. Furthermore, the fact that there were no other eyewitnesses to the accident does not render plaintiff's testimony insufficient to support the court's verdict. There was further supporting evidence, although contradicted, in Dilbeck's testimony concerning the tire marks in the snow behind the trailer. This case turned upon the assessment of the evidence, and resolutions of credibility matters, and the trial court's decisions thereon are not contrary to the manifest weight of the evidence.

■ Finally, there is no evidence in the record to support a conclusion that plaintiff Casey was guilty of comparative negligence prior to the accident. Cattani contends that Casey should have been paying attention to the loading and unloading of the truck, rather than conversing with others. There is no indication that Casey's conversation with others prior to the accident, or his general level of attention, contributed at all to the injuries he sustained. There was no error by the court in failing to assess comparative negligence to Casey in the instant case.

For the reasons stated, the judgment of the circuit court in this matter is affirmed.

Affirmed.

HEIPLE, P.J., and STOUDER, J., concur.