VIOLA M. HAIGHT, as Plenary Guardian of the Estate and Person of Michael M. Kraemer, a Disabled Person, Plaintiff-Appellant, v. ALDRIDGE ELECTRIC COMPANY, INC., *et al.*, Defendants-Appellees.

Second District No. 2—90—0829

Opinion filed June 18, 1991.—Rehearing denied August 5, 1991.

Philip H. Corboy, Thomas A. Demetrio, and Todd A. Smith, all of Corboy & Demetrio, P.C., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, Russell P. Veldenz, of French, Rogers, Kezelis & Kominiarek, P.C., and James P. DeNardo and Stephen B. Novy, both of McKenna, Storer, Rowe, White & Farrug, all of Chicago, and Kathryn C. Jones, of McKenna, Storer, Rowe, White & Farrug, of Waukegan (Richard C. Palmer, Michael J. Ross, and Christine L. Olson, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Viola Haight, as plenary guardian of the estate and person of Michael Kraemer, brought a negligence action against defendants, Aldridge Electric Company, Inc. (Aldridge), Robert Trujillo (Trujillo), and Ald-Cass Electric, Inc. (Ald-Cass), for damages Kraemer allegedly sustained in an automobile accident with Trujillo. The case proceeded to trial before a jury. At the close of plaintiff's case, the trial court entered a directed verdict in favor of Ald-Cass. At the con-

clusion of all the evidence, the jury returned a verdict in favor of Trujillo and Aldridge and against plaintiff. On appeal, plaintiff contends that the trial court erred in denying her post-trial motion for judgment notwithstanding the verdict and a new trial on the issue of damages only, or alternatively, for a new trial on all issues. Plaintiff also challenges the propriety of certain trial court rulings which plaintiff contends denied her a fair trial. We reverse and remand for a new trial.

The following facts are relevant to our consideration of the numerous issues presented for review. This case arose out of a two-car accident which occurred on September 9, 1986, at 8:30 p.m., at the intersection of Route 45 and Winchester Road in Lake County, Illinois. At the time of the accident, Trujillo had worked as an equipment operator for Ald-Cass for five years. Several days prior to the date of the accident, Ald-Cass had contracted Trujillo's labor to Aldridge for work at the Winchester Estates Subdivision in Libertyville, Illinois. Eugene Temple, an employee of Aldridge, was Trujillo's foreman at the jobsite. At the time of the accident, Trujillo was driving a truck, owned by Aldridge, eastbound on Winchester Road. Temple was a passenger in the Aldridge truck. Delores Kennedy was driving south on Route 45 with her boyfriend, Kraemer, and their son, Adam Kennedy. Route 45 was a two-lane State highway with a 55-mile-per-hour speed limit. Traffic on Route 45, the preferential highway, was governed by a yellow flashing light. Traffic on Winchester Road was governed by a stop sign and a flashing red light. All of the known occurrence witnesses testified that it was dark at the time of the accident. Since it had rained earlier in the evening, the roads were damp.

Kennedy testified that she was driving, with Kraemer in the front passenger seat and their son Adam in the backseat. She turned her headlights on at the beginning of the trip, 5 to 10 minutes before the accident. After passing a van, Kennedy approached the Winchester Road intersection at 50 to 55 miles per hour. Kennedy stated that she put her high beams on after she passed the van, and that she was talking to Kraemer at the time. Kennedy saw the headlights from the Aldridge truck as it crossed a set of railroad tracks prior to the intersection. The truck then continued to roll toward the intersection, but did not stop at the stop sign. Kennedy then stated that she flashed her lights to low beam, applied her brakes and swerved to avoid the Aldridge truck in the intersection. Kennedy's vehicle then struck the Aldridge truck behind the cab. Kraemer did not have any recollection of the accident, and Adam was sleeping in the backseat at the time of the accident.

Trujillo testified that he approached the intersection of Winchester Road at Route 45, crossed a set of railroad tracks and proceeded toward the stop sign. Once at the intersection, Trujillo stopped and looked in both directions along Route 45. Trujillo saw the headlights of a vehicle approaching from the south, but did not see any vehicles approaching from the north. Trujillo then entered the intersection and was struck by Kennedy's vehicle.

Temple also testified that, as they approached the intersection, he saw the headlights of a vehicle approaching from the south. After entering the intersection, their truck was then struck in the side by the Kennedy vehicle.

The vehicle approaching from the south, which was observed by Trujillo and Temple, was driven by Donald Stroot. Stroot testified that he approached the intersection at approximately 45 to 50 miles per hour. Stroot stated that he was looking straight ahead prior to the collision and could see a traffic signal at Peterson Avenue, one-half mile away. As he approached the intersection, Stroot saw the headlights from the Aldridge truck. Stroot then recalled that the Aldridge vehicle stopped at the intersection. Stroot did not see any vehicles or headlights of vehicles approaching from the north.

Libertyville police officer Paul Jennings arrived at the scene of the accident at 8:44 p.m. Jennings described the lighting conditions at that time as "legally dark, twilight." Jennings interviewed Trujillo, Temple and Stroot. While taking Trujillo's statement, Jennings noticed a mild odor of alcohol. Jennings inspected the Kennedy vehicle, and stated that it appeared to him that the headlight switch was in the "on" position.

Gerald Kennedy, Delores Kennedy's brother, testified that, while at the hospital after the accident, he heard Trujillo state that Kennedy did not have her lights on.

Plaintiff initially filed her complaint against Aldridge, Trujillo and Kennedy in the circuit court of Cook County. On July 15, 1987, the court granted defendants' motion to transfer the case to Lake County under the doctrine of *forum non conveniens*. Plaintiff then filed her amended complaint in the circuit court of Lake County, adding Ald-Cass as a defendant. Plaintiff settled with Kennedy prior to trial. The case then proceeded to trial in Lake County. After plaintiff rested, the trial court granted a directed verdict in favor of Ald-Cass. After the close of all the evidence, the jury returned a verdict in favor of Trujillo and Aldridge and against plaintiff. The trial court then entered judgment on the jury verdict.

Plaintiff filed a post-trial motion requesting judgment notwithstanding the verdict on the issue of damages only or, in the alternative, a new trial on all issues. Attached as an exhibit to plaintiff's motion was an affidavit of juror Jeanie Klein. Klein's affidavit stated that during the course of jury deliberations, another juror informed the jurors that he had looked at an almanac which indicated that sunset on the day of the accident occurred at "six something p.m." The trial court subsequently denied plaintiff's post-trial motion, and plaintiff filed her timely notice of appeal.

Plaintiff raises the following issues on appeal: (1) whether the trial court erred in denying plaintiff's motions for a directed verdict and for judgment notwithstanding the verdict; (2) whether the verdict in favor of Trujillo and Aldridge was against the manifest weight of the evidence; (3) whether the introduction of certain extraneous evidence by a juror during deliberations requires a new trial; (4) whether plaintiff was denied a fair trial by the introduction of certain allegedly prejudicial evidence; (5) whether the trial court erred in directing a verdict in favor of Ald-Cass; and (6) whether the circuit court of Cook County erred by transferring this case to Lake County under the doctrine of *forum non conveniens.*

We first consider plaintiff's contention that the circuit court of Cook County erred when it transferred this case to Lake County under the doctrine of *forum non conveniens.* Plaintiff argues that, based on the recent supreme court case *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, defendants failed to prove that certain relevant factors strongly favored a transfer to Lake County. We disagree.

■ Under the doctrine of *forum non conveniens,* a court may decline to exercise jurisdiction of a case whenever it appears that there is another forum with jurisdiction of the parties in which trial can be more conveniently had. (*Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 223.) In *Torres v. Walsh* (1983), 98 Ill. 2d 338, the supreme court outlined the factors to be taken into consideration in deciding whether to apply the doctrine:

"[T]he availability of an alternate forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties. We also caution our trial courts that unless those factors strongly favor the defendant, then the plaintiff should be allowed to exercise his choice in deciding in what forum to bring the case when venue is proper.

If there are sufficient factors that favor the plaintiff's choice of forum, then the defendant's inconvenience should not be considered, provided venue is proper. For unless the balance strongly favors the defendant, then the plaintiff should be able to exercise his statutory right to choose his forum." (*Torres*, 98 Ill. 2d at 351.)

Plaintiff's choice deserves less deference, however, where the plaintiff is not a resident of the chosen forum. *Griffith*, 136 Ill. 2d at 106.

■ In the present case, the plaintiff's complaint arose out of an automobile accident which occurred in Lake County. All of the parties to the action, including plaintiff, were living and working in Lake County at the time of the accident. All of the occurrence witnesses to the accident resided in Lake County at the time of the accident. Aldridge's principal place of business and only office was located in Lake County. The Aldridge truck involved in the accident and any records pertaining to the truck were located in Lake County. The Libertyville police and fire departments, Mundelein fire department, and Grayslake fire department, all located in Lake County, responded to and investigated the accident. Kraemer was initially treated at Condell Memorial Hospital in Lake County. Apparently, the only connection plaintiff was able to establish with Cook County was the fact that Kraemer received subsequent medical treatment at Loyola Hospital and the Rehabilitation Institute of Chicago. Thus, several of Kraemer's medical witnesses were from Cook County.

We find the facts of the instant case to be clearly distinguishable from those in *Griffith*, relied on by plaintiff. *Griffith* arose out of an airplane crash that occurred in Du Page County. The flight originated from Meigs Field in Chicago and was en route to Du Page County airport when the crash occurred. In concluding that the relevant factors did not weigh strongly in favor of transfer of venue from Cook to Du Page County, the supreme court noted, *inter alia*, that both pre-occurrence and post-occurrence witnesses were dispersed fairly evenly among Cook, Du Page and Kane counties. Moreover, the court found that Cook County's interest in resolving the litigation was at least as strong as that of Du Page County, in that Cook County had an interest in insuring the safety of the flights that emanated from its airports. Such factors, which weighed against transfer in *Griffith*, are not present in the instant case.

A circuit court has broad discretion in determining whether to grant a motion to transfer a cause of action to another jurisdiction based on *forum non conveniens*. (*Bland*, 116 Ill. 2d at 223.) Such a decision will not be reversed on appeal unless the circuit court abused

its discretion. (*Bland,* 116 Ill. 2d at 223.) As stated by the court in *Griffith,* it is not the role of a reviewing court to substitute its judgment for that of the trial court, or to decide whether the reviewing court would have weighed the factors differently, or even to determine whether the trial court exercised its discretion wisely. (*Griffith,* 136 Ill. 2d at 115.) Based on the foregoing, we cannot conclude that the circuit court of Cook County abused its discretion in granting defendants' *forum non conveniens* motion.

Next, we address plaintiff's contention that she was denied a fair trial by the introduction of certain allegedly prejudicial evidence. Specifically, plaintiff argues that the probative value, if any, of evidence relating to Kraemer's religious activities and beliefs, Kraemer's mother's prior divorces and their effect on Kraemer, and Kennedy's paternity actions pending against Kraemer, is outweighed by the prejudicial effect such evidence must have had on the jury. We conclude that plaintiff's arguments in this regard are without merit.

■ First, plaintiff argues that the trial court erroneously failed to adhere to its ruling on plaintiff's motion *in limine* regarding references to Kraemer's religion. Plaintiff contends that defendants were improperly allowed to question Kraemer and other witnesses regarding Kraemer's religious beliefs. We disagree. At the hearing on plaintiff's motion *in limine,* the trial court ruled that defendants were not to mention the name of Kraemer's religion, Jehovah's Witnesses; the name of the church publication, "Watch Tower"; or the phrase "servicing." The court ruled that defendants could question Kraemer regarding religious meetings he attended, whether he was involved in community activities for his church, and whether he read the Bible. In fact, plaintiff's attorney stated at the hearing on the motion that he had "no trouble" with questions about reading the Bible.

In her brief, plaintiff refers this court to several points in the record wherein the allegedly prejudicial questions were asked. We have reviewed the record and find that the complained-of questions, and answers thereto, revealed that when Kraemer was in high school he spent some time "knocking on doors"; that he attended religious services three times a week; and that he read the Bible. Defendants never mentioned the name of Kraemer's religion; never used the phrase "servicing"; and never mentioned the church paper "Watch Tower." Contrary to plaintiff's assertions, these innocuous questions did not inquire into Kraemer's religious beliefs. Rather, they inquired into his physical and mental capabilities before and after the accident. We agree with the trial court when, in ruling on plaintiff's post-trial motion, it stated:

"[A]s to the discussion of Mr. Kraemer's religious postulatizing [*sic*] activities before and after the accident, that was brought up by the defendants for the purpose of comparing what he was able to do before the accident compared to what he was able to do after the accident. The testimony did not violate my ruling on the motion in limine. That ruling was that his religion, Jehovah's Witness religion, could not be specifically mentioned because it might create prejudice. The fact that he was a Jehovah's Witness was never brought up during the testimony, and the attorneys adhered to my ruling. As to the postulatizing [*sic*] activity, I think it was fair comment to show what he was or was not able to do after the occurrence compared to what he was able to do before."

Plaintiff also argues that the trial court erroneously allowed defendants to inquire into certain paternity actions brought against Kraemer by Kennedy. In this regard, plaintiff fails to provide citation either to pertinent authority in support of her position or to the record wherein the allegedly prejudicial material is to be found, and we find her argument to be without merit. Rather, we agree with the trial court and defendants that Kennedy, who was a central witness on the issue of liability, may have had a financial interest in the outcome of this lawsuit. As such, inquiry into this area was both relevant and probative of her credibility. It was not unduly prejudicial.

Plaintiff also argues that the trial court erroneously allowed defendants to inquire into the effect of plaintiff's prior divorces on Kraemer and into the fact that Kraemer was treated for depression in high school. Plaintiff argues that, based on *Karsten v. McCray* (1987), 157 Ill. App. 3d 1, this case must be reversed and remanded for a new trial in the absence of medical proof of a connection between any alleged preexisting condition and the injury complained of. Once again, plaintiff has failed to provide us with citations to the record wherein the alleged trial court errors occurred, and we must rely on defendants' citations thereto for guidance. Defendants argue, *inter alia*, that, based on *Elliott v. Koch* (1990), 200 Ill. App. 3d 1, medical testimony was unnecessary to connect Kraemer's prior and present condition.

In *Elliott*, the court stated that, "evidence of a prior injury is admissible if a causal relationship between the injuries is shown *or* where the injury involved the same area of the body." (Emphasis in original.) (*Elliott*, 200 Ill. App. 3d at 14.) On the other hand, no medical testimony is needed to introduce the existence of a prior injury to the same area of the body. (200 Ill. App. 3d at 14.) A causal connec-

tion is required only where the injuries do not involve the same area of the body. (200 Ill. App. 3d at 14.) In *Karsten*, relied on by plaintiff, the alleged preexisting injuries were not to the same area of the body. (*Karsten*, 157 Ill. App. 3d at 9.) Here, the questions regarding Kraemer's depression in high school and his mother's divorces were an attempt to inquire into the same or similar emotional and personality conditions that allegedly afflict Kraemer at the present time. Moreover, as the trial court noted in ruling on plaintiff's post-trial motion, defendants' brief questions in this area were "simply a part of the background of the young man as to what his general conditions were to establish or disestablish promise for his entering into the work field and having various employment." The trial court did not err in allowing such brief testimony.

In reviewing the record, we also note that plaintiff's counsel questioned plaintiff on the same issues during direct and redirect examination. We agree with defendants that, under *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, the questions and subsequent testimony in this area could not have been prejudicial since the same evidence was discussed by plaintiff's witnesses. "A case will not be reversed for an alleged error in admitting evidence where the same kind of evidence or evidence to the same effect is introduced by the complaining party." *Millette*, 84 Ill. App. 3d at 23.

To briefly summarize, plaintiff has alleged that the trial court erred in admitting testimony regarding Kraemer's religious activities, paternity actions, and general emotional condition. The arguments are grounded in the claim that the court erroneously weighed probativeness and prejudice. It is the function of the trial court to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted, and such rulings will not be overturned on appeal unless a clear abuse of discretion is shown. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 489.) Here, we believe the trial judge balanced the probative value of the evidence against the prejudice it might engender and determined that the evidence was admissible. Under the circumstances, we cannot say that the court abused its discretion.

■ Plaintiff also contends that the jury was improperly instructed. Although this argument is contained in the portion of plaintiff's brief which contends that the jury's verdict was against the manifest weight of the evidence, we agree with defendant Aldridge that the issue is more properly one of alleged trial court error. Plaintiff argues that instructing the jury on the statutory obligation of drivers to exercise caution at a flashing yellow light and to maintain a

proper speed was improper in light of the facts of this case and Illinois law. Trujillo argues that plaintiff has effectively waived objection to the instruction regarding speed restrictions by failing to raise the objection in her post-trial motion and that, nevertheless, both instructions were properly received by the jury. The following are the complained-of instructions:

"There was in force in the State of Illinois at the time of the occurrence in question, a certain statute which provided that:

When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop at a point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.

When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution.

If you decide that defendants violated the statute on the occasion in question, then you may consider that fact together with all other facts and circumstances in evidence in determining whether that the defendants were negligent before and at the time of the occurrence. If you find that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiff, then it is not a defense that some third person may also have violated the statute and may also have been to blame.

On the other hand, if you find some third person violated this statute and that her violation was the sole proximate cause of the occurrence, and that no negligence of the defendants was a proximate cause of the occurrence, then your verdict should be for the defendants."
(Ill. Rev. Stat. 1987, ch. 95½, par. 11—309; Illinois Pattern Jury Instructions, Civil, No. 60.02 (2d ed. 1971).)

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

No vehicle may be driven upon any highway of this state at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway or endangers the safety of any person or property. The fact that the speed of the vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an in-

tersection or when special hazard exists with respect to other traffic or by reason of weather or highway conditions. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

If you find some third person violated this statute and that her violation was the sole proximate cause of the occurrence, and that no negligence of a defendant or defendants was a proximate cause of the occurrence, then your verdict should be for the defendant."

Ill. Rev. Stat. 1987, ch. 95½, par. 11—601(a); Illinois Pattern Jury Instructions, Civil, No. 60.02 (2d ed. 1971).

We point out initially that plaintiff has not waived objection to the instruction regarding speed restrictions. In her post-trial motion, plaintiff argues that the trial court "erred in allowing specific jury instructions concerning the intervention of outside agencies and persons and the purported defense of the defendant on sole proximate cause." We believe this objection is specific enough to encompass the complained-of instruction and preserve the issue for review.

The essence of plaintiff's argument in this regard is that requiring a driver on a preferential highway to decrease speed when approaching an intersection governed by a stop sign or flashing red light is contrary to Illinois law and common sense. In support of her argument, plaintiff refers us to *Salo v. Singhurse* (1989), 181 Ill. App. 3d 641, relying on the following language:

"For the jury to attribute 60% of the fault to Salo under such circumstances is not only contrary to the manifest weight of the evidence, but also beyond comprehension and reason. *** [Citation.] If we were to follow the jury's apportionment in this case, every time a driver on a preferential highway saw an approaching car on an intersecting road or drive, he essentially would be required to stop to make sure the other car obeyed the stop sign and stayed there or else be found negligent. As the court in *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 235 N.E.2d 17 stated: 'Stop signs are erected for the obvious purpose of requiring motorists to yield to vehicles on through highways. If the motorist on the through highway had to travel at such a speed that he could not stop his car in time to avoid collisions with vehicles which ignore stop signs on intersecting roads, the purpose of having a through highway in the first place would be entirely thwarted.

The driver who has the stop sign cannot assume the car on the through highway will stop. It is the other way around.' [Citation.] We therefore reverse the judgment apportioning 60% of the fault to Salo." *Salo*, 181 Ill. App. 3d at 644.

However, plaintiff fails to note that the court in *Salo* also stated that the driver on the preferential road does not have an absolute right-of-way. "He too must keep a proper lookout, observe due care in approaching and crossing intersections and drive as a prudent person would to avoid a collision when danger is discovered or, by the exercise of reasonable care, should have been discovered." (*Salo*, 181 Ill. App. 3d at 643.) Indeed, it is well settled that, contrary to plaintiff's argument that the instructions placed a "nonexistent standard of care on Kennedy," drivers on preferential highways do not have an absolute right-of-way. In *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, the court set out the standard of care required of a driver proceeding along a preferential highway, as follows:

"The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed. Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger. Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered. [Citations.]

The Illinois decisions, in applying this rule, have consistently held that it is the function of the jury to determine whether the judgment of the driver on the preferential highway conformed to the standards of the reasonable and prudent man." *Fincham*, 42 Ill. App. 3d at 721.

See also *Nolan v. Elliott* (1989), 179 Ill. App. 3d 1077, 1082.

Plaintiff also argues that the complained-of instructions were improperly given because there was no evidence to support their introduction. We disagree. Traffic on Route 45 at its intersection with Winchester Road was controlled by a flashing yellow signal, which Kennedy was therefore required to obey. It is also arguable that, if Kennedy was traveling without illuminated head lamps, she was not proceeding "with caution." The speed limit on Route 45 was 55 miles per hour. As she approached the intersection, Kennedy was traveling at 50 to 55 miles per hour. At the time of the accident it was dark

and the roads were damp. Under the circumstances of this case, we believe there was sufficient "evidence tending to show that a violation of a statute by a third person may have been the sole proximate cause of the occurrence." (See Illinois Pattern Jury Instructions, Civil, No. 60.02, Notes on Use (2d ed. 1971); see also *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 121.) Thus, the trial court did not err in submitting the complained-of instructions to the jury.

Plaintiff next contends that the trial court erred in directing a verdict in favor of Ald-Cass on the issue of whether Trujillo was an agent of Ald-Cass at the time of the accident. The trial court granted the motion based upon Ald-Cass' argument that Trujillo was a loaned servant and, therefore, no longer their agent. Plaintiff argues that the directed verdict was erroneous, in that, although Aldridge paid for Trujillo's time, it also paid Ald-Cass "a bit of a premium." Thus, plaintiff argues that a fact question existed as to whether Trujillo was actually Aldridge's loaned servant, and that the trial court erred in taking the issue from the jury.

■ The law in this area is, of course, well settled. Verdicts are properly directed when all the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) Additionally, in personal injury actions where the plaintiff attempts to prove that the negligence of an employee is imputable to the employer, it is the burden of the plaintiff, who asserts that such a relationship exists, to show that the employee was acting as the agent of the employer when the injury was inflicted. (*Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 140.) In order to meet this burden, plaintiff must show not only that the alleged tort-feasor was an employee, but that the relationship of principal-agent was not suspended at the time of the injury and that this relationship existed with respect to the particular transaction from which the cause of action arose. *Bolwin*, 32 Ill. App. 3d at 140.

■ An employee in the general employment of one employer may be loaned to another for the performance of special work and become the employee of the employer to whom he is loaned while performing the special service. (*A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 346-47.) Whether such a transfer of employment occurs depends on whether the borrowing employer has the right to control the employee with respect to the work performed. (*A.J. Johnson*, 82 Ill. 2d at 347.) In making this determination various factors, such as the manner of hiring, the mode of payment, the nature of the

work, the manner of direction and supervision of the work, and the right to discharge are considered. (*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719.) The dominant factor is the right to control the manner in which the work is to be done, and the most significant inquiry is the extent to which the first employer delegated or released to the second employer the right to control. (*Mosley*, 76 Ill. App. 3d at 719.) The fact that an employee does not receive his wages from the borrowing employer will not defeat the finding of a loaned employee situation. (*A.J. Johnson Paving Co. v. Industrial Comm'n,* 82 Ill. 2d at 349; *Bituminous Casualty Corp. v. Wilson* (1983), 119 Ill. App. 3d 454, 460.) Nor will the fact that the loaning employer receives some compensation or benefit from the borrowing employer necessarily defeat such a finding. (See *American Stevedores Co. v. Industrial Comm'n* (1951), 408 Ill. 449, 452; see also *Highway Insurance Co. v. Sears, Roebuck & Co.* (1968), 92 Ill. App. 2d 214, 216.) Although the existence of a loaned employee relationship is generally a question of fact, it may become a question of law where the undisputed facts are susceptible of but a single inference. *M & M Electric Co. v. Industrial Comm'n* (1974), 57 Ill. 2d 113, 117; *American Stevedores Co. v. Industrial Comm'n* (1951), 408 Ill. 449, 453.

■ Turning now to the facts of this case, the evidence, adduced during plaintiff's case in chief, established the following. At the time of the accident, Trujillo had worked as an equipment operator for Ald-Cass for five years. Several days prior to the accident, Ald-Cass had contracted Trujillo's labor to Aldridge for work on the "Red Seal Project," a subdivision of homes known as Winchester Estates. The Ald-Cass supervisor who assigned Trujillo to work for Aldridge was George Pieracci. When Pieracci assigned an Ald-Cass employee to Aldridge, he would tell him to work for the foreman at the jobsite and to take directions and instructions from that foreman. Once an employee reported to Aldridge, he was under its supervision, and received no further instructions from Ald-Cass.

According to Pieracci and Richard Cardwell, the safety director for both Aldridge and Ald-Cass, Aldridge considered Trujillo to be its agent and employee and under its direction on the day of the accident. Aldridge employee Eugene Temple was Trujillo's foreman at the "Red Seal Project" jobsite and issued directions to Trujillo. No one from Ald-Cass ever visited the jobsite or checked on Trujillo's work. In fact, no one from Ald-Cass even knew of the "Red Seal Project" until after the accident. Trujillo operated Aldridge equipment at the jobsite and was driving an Aldridge truck at the time of the accident.

Aldridge directed the number of hours Trujillo worked each day and approved his time sheets for payment of wages. Although Trujillo received his wages from Ald-Cass, Ald-Cass would then bill Aldridge for Trujillo's time plus a bit of a premium.

On the day of the accident, Temple asked Trujillo to help him return some materials from the jobsite to the Aldridge shop. After unloading the equipment, they started back to the jobsite. On the way, they stopped at Temple's house to pick up some mail. Trujillo then drove while Temple looked at his mail, and the accident occurred soon thereafter.

We conclude that plaintiff has failed to sustain her burden of proving that the principal-agent relationship between Ald-Cass and Trujillo had not been suspended on the day of the accident. Moreover, nothing in the evidence supports a finding that such a relationship existed with respect to the particular transaction from which the cause of action arose. (*Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 140.) Plaintiff's attorney apparently conceded as much at the hearing on her post-trial motion, where the following colloquy took place:

"THE COURT: Was this an Ald-Cass job?

MR. SMITH: No, it was not.

THE COURT: Okay. So where was the scope of employment on behalf of Ald-Cass?

MR. SMITH: The other evidence in the case was, Mr. George—and I've always had trouble with his name, Pieracci, I believe it is. I'll try and give you a spelling later. He directed Mr. Trujillo as to where to report. He directed Mr. Trujillo as to who he was to respond to in regard to the job.

THE COURT: But then once he did that—

MR. SMITH: Once he was on the job, per se, then Ald-Cass was not—

THE COURT: —the string was cut, and he no longer had any control. Mr. Trujillo then was completely subject to the other employer in the supervision of the job, as I recall the testimony.

MR. SMITH: You're correct about that, Judge."

In light of the above, we believe it may fairly be said that all of the evidence, viewed most favorably to plaintiff, so overwhelmingly favors Ald-Cass that no contrary verdict based on this evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The trial court did not err in directing a verdict in favor of Ald-Cass.

■ We next address plaintiff's argument that she is entitled to a new trial because of the unauthorized production of evidence by a juror during deliberations. As noted previously, attached as an exhibit to plaintiff's post-trial motion was an affidavit of juror Jeanie Klein. Juror Klein's affidavit stated that, during the course of deliberations, juror Charles Plett informed the jury that he had looked at an almanac which "reflected a sunset time of six something p.m." on the date of the accident. The affidavit further stated that juror Klein felt that her "fellow juror's introduction of this Almanac evidence had a significant impact on our deliberations on an issue in this case." Plaintiff, relying primarily on *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, argues that the unauthorized evidence directly related to issues in this case and was presumptively prejudicial. Defendant Trujillo, relying on *People v. Holmes* (1978), 69 Ill. 2d 507, and *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, responds that this court should disregard juror Klein's affidavit, and that, nevertheless, plaintiff was not prejudiced by the extraneous evidence.

We note initially that Trujillo's argument, that the *Holmes* case requires this court to disregard the Klein affidavit, is without merit. Trujillo cites *Holmes* for the proposition that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions." (*Holmes*, 69 Ill. 2d at 514-15, citing Fed. R. Evid. 606(b).) However, Trujillo fails to include the entire passage of the rule relied upon by the court. The complete passage, as noted by the court, is as follows:

"(b) *Inquiry into validity of verdict or indictment.*[—] Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes." (Emphasis added.) (*Holmes*, 69 Ill. 2d at 514-15, citing Fed. R. Evid. 606(b).)

Thus, while we agree with Trujillo that testimony regarding the *effect* of the almanac evidence on the jury may not be considered, testimony as to the *nature* of such evidence may in fact be considered. See *Holmes*, 69 Ill. 2d at 514.

In *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, wherein the court refers to cases cited by both plaintiff and Trujillo, the court set out the following analysis, applicable in situations such as this.

> "Generally, a jury's verdict cannot be impeached by the testimony of the jurors. A juror, however, can testify as to whether extraneous, prejudicial information was brought to the jury's attention or whether an outside influence was improperly brought to bear upon any jury. (*People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656.) Not every instance in which extraneous or unauthorized information reaches the jury results in reversible error. Only when the losing party suffers prejudice is reversal required. (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 466 N.E.2d 640.) On the other hand, the losing party need not prove actual prejudice. That party need only show that the unauthorized information relates directly to an issue in the case and may have improperly influenced the verdict. (*Frede v. Downs* (1981), 101 Ill. App. 3d 812, 428 N.E.2d 1035; *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 386 N.E.2d 134.) The burden is then placed on the prevailing party to demonstrate that 'no injury or prejudice resulted.' 68 Ill. App. 3d 236, 242, 386 N.E.2d 134, 139." (*Birch*, 139 Ill. App. 3d at 408-09.)

"Because the actual effect of the conduct on the minds of the jury cannot be proved, *** the standard to be applied is whether the 'conduct involved "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." ' " *Holmes*, 69 Ill. 2d at 514.

Here, it is obvious that the almanac evidence as to the time of sunset on the day of the accident related directly to a crucial issue in this case—visibility. The burden then shifted to defendants to demonstrate that no injury or prejudice resulted. We do not believe that this burden has clearly been met.

In this regard, Trujillo argues that any evidence derived from the almanac was merely cumulative evidence on the visibility issue and that, therefore, no prejudice resulted. In support of this argument, Trujillo refers us to *Birch*, wherein the court stated:

> "A verdict in a civil case ordinarily need not be set aside because the jurors made an unauthorized visit to the scene of an

accident where the visit disclosed nothing about the location not accurately depicted by photographs, maps, diagrams, or the like lawfully admitted into evidence. [Citation.] When maps and photographs lawfully admitted into evidence correctly depict the area, the prevailing party has met his burden of proving the lack of prejudice." (*Birch*, 139 Ill. App. 3d at 409.)

Trujillo then argues that, as in *Birch*, the evidence as to the time of sunset disclosed nothing about the issue of visibility not already admitted into evidence. We disagree.

In *Birch*, the court noted that the parties did not dispute the physical characteristics of the accident scene, but merely disagreed on the conclusions to be drawn from the evidence. Such is not the case here. Although we agree with Trujillo that there was significant evidence presented at trial that it was "dark" at the time of the accident, there was also conflicting evidence in this regard. For example, although Delores Kennedy testified that it was dark at the time of the accident, she also testified that Trujillo's vehicle, as it was crossing the railroad tracks, was identifiable as a truck. In addition, Donald Stroot, who testified that it was dark at the time of the accident, also testified that he was able to determine that Trujillo's vehicle was a truck, even though at one point the vehicle was outside of his headlight range. Finally, although Officer Paul Jennings described the lighting conditions in his accident report as "darkness," he also testified that visibility at the time he arrived at the accident scene was such that he could see an automobile or a deer or a sign or trees at a distance of two-tenths of a mile in either direction. Moreover, since none of the parties presented specific evidence as to the time of sunset on the evening of the accident, the almanac evidence is not properly described as merely "cumulative." Defendants have therefore failed to demonstrate that "no injury or prejudice resulted." *Birch*, 139 Ill. App. 3d at 409.

We believe that, if the jury was at all in doubt as to the visibility issue, this extraneous evidence could have tipped the scales in defendants' favor, and thus may have improperly influenced the verdict. Given our conclusion that the extraneous information, improperly brought to the jury's attention, was in the nature of evidence relating directly to a crucial issue in this case with which plaintiff had neither been confronted at trial nor had the opportunity to refute, we hold that the trial court should have granted plaintiff's post-trial motion requesting a new trial.

For the foregoing reasons, we affirm the entry of a directed verdict in favor of Ald-Cass. As to Trujillo and Aldridge, we reverse the

trial court's judgment and remand the cause for a new trial consistent with this opinion. In light of the above, we need not consider plaintiff's remaining contentions that the trial court erred in ruling on her motions for directed verdict and judgment notwithstanding the verdict and that the jury's verdict was against the manifest weight of the evidence.

Affirmed in part; reversed in part and remanded.

NICKELS and WOODWARD, JJ., concur.